(September 6. 1900.)

## STATE v. ADA COUNTY.
[62 Pac. 457.]

DELINQUENT TAXES—PURCHASE BY THE COUNTY—COUNTY LIABILITY TO STATE.—By the terms of sections 1410, 1411 and 1554 of the Revised Statutes as amended by the laws of 1899, a county is not liable to the state for uncollected state taxes levied upon lands, which, in default of payment, are sold at delinquent tax sale, and bid in by the county until such lands are redeemed or otherwise disposed of by the county.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

E. J. Frawley and George M. Parsons, for Appellant.

The legislature cannot commit to the board this power to increase (by way of allowance for delinquency or otherwise) the amount of the tax to be paid by the people. And under the California statute this power was delegated to a state board, and not to a board in each county. (*San Francisco etc. R. R. Co. v. State Board,* 60 Cal. 34; *New York v. Davenport,* 92 N. Y. 604.) Every political subdivision of a state when it demands taxes from the people must show due authority from the state to make the demand. (Cooley on Taxation, 678.) The statutes provide for the payment of the state proportion of the delinquent tax when the property is redeemed or is disposed of. (See Laws 1899, sec. 1554, p. 267.)

Samuel H. Hays, Attorney General, for the State.

The levy of a lump sum is valid. (See *State v. Bailey,* 56 Kan. 81, 42 Pac. 373; *State v. Baker County,* 24 Or. 141, 33

Pac. 530.)   The duty of the commissioners is stated as follows: "To ascertain the rate of state taxes necessary to be levied in order to secure the amount apportioned to such county," and to levy the same.   Under this authority it is their duty to so fix the rate as to produce the full amount due the state, and in doing this they should consider possible delinquencies and cancellations.   (*Edwards v. People,* 88 Ill. 340; *Union Trust Co. v. Weber,* 96 Ill. 346; *S. C. etc. P. R. Co. v. Osceola Co.,* 52 Iowa, 26, 2 N. W. 593; *C. etc. R. R. Co. v. Baldridge,* 177 Ill. 229, 52 N. E. 263; *Houghton v. Austin,* 47 Cal. 646; *San Francisco etc. Ry. Co. v. State Board,* 60 Cal. 12 (34).)   The computation of the amount of tax to be raised and the determination of the rate per cent may be placed in the hands of other than legislative officers.   (25 Am. & Eng. Ency. of Law, 182.)   Neither does this construction violate the constitutional provision as to uniformity.   It is the duty of the state board to equalize the tax and provide for uniformity among the counties.   (*State v. Board of Commissioners,* 8 Wyo. 104, 55 Pac. 451; *State v. County of Multnomah,* 13 Or. 287, 10 Pac. 635; Burroughs on Taxation, 194, 25 Am. & Eng. Ency. of Law, and cases there cited.)

SULLIVAN, J.—This action was brought by the state against Ada county and John W. Eagleson, treasurer of said county, to recover judgment for the sum of $796.47, and interest thereon; that being the balance of state tax due from said county for the year 1897.   The complaint alleges, among other things, that the state board of equalization met pursuant to law on the fourth day of August, 1897, to determine the amount of state tax that each county must pay to the state for the year 1897; that such amounts were determined; and that the amount apportioned to Ada county had all been paid, save and except the balance above stated.   Judgment for that sum is prayed for.   A general demurrer to the complaint was interposed by the defendants, and overruled by the court.   The defendants, who are appellants here, elected to stand on the demurrer, and judgment was entered as prayed for.   This appeal is from the judgment.

This suit involves the respective rights of the county and state in the assessment and collection of taxes and the distribution thereof. The history of the state shows that there is a continually increasing deficit in the amount of tax apportioned to the various counties to be paid to the state, and the question involved is one of more than ordinary importance to the state. The contention of the attorney general, on behalf of the state, is that the sum assessed against the counties under and by virtue of section 1495 of the Revised Statutes, 1887, and the act amendatory thereof (see Sess. Laws 1895, p. 117), is in the nature of a judgment against the county, and that the county must pay that sum without deduction from any cause. The deficit in the amount assessed or apportioned to the respective counties arises from the failure of some of the property owners to pay their taxes, and because thereof delinquencies arise, and at the tax sale much of the property on which the tax has become delinquent is struck off to the county, and some of it never redeemed. The deficit referred to is occasioned by the nonredemption of such property. Under the law, the county becomes the owner of such property, if not redeemed within the time allowed for its redemption. Since Idaho was admitted as a state, two systems of taxation have been in vogue in this state. Prior to 1895 an *ad valorem* tax of thirty-five cents on each $100 of all taxable property of the state was levied for state purposes. (See section 1410 of the Revised Statutes. Section 7, article 7, of the state constitution, provides as follows: "All taxes levied for state purposes shall be paid into the state treasury, and no county, city, town, or other municipal corporation, the inhabitants thereof, nor the property therein, shall be released or discharged from their or its proportionate share of taxes to be levied for state purposes." Under the provisions of said section 1410 of the Revised Statutes, as affected by said section of the constitution, no duty was imposed on the county but to include said levy of thirty-five cents with the levy for county purposes (so far as the payment of the thirty-five-cent levy is concerned), and to pay to the state its percentage as soon as the same was received by the proper county officer. That system of levying state taxes was

superseded and very much changed by the legislature in 1895 and 1899. Said section 1410 was amended to read as follows: "There is hereby levied for state purposes for the years 1897 and 1898, respectively, upon all property not exempt by law from taxation, an annual *ad valorem* tax of $253,000, which shall be paid by the several counties of this state in the proportion which their assessed valuation as shown by their respective assessment-rolls bears for the year next preceding that in which said tax is to be paid, to the total assessed valuation of this state for the preceding year; and upon the same property the board of county commissioners of each county is also hereby authorized and empowered to levy, annually, a tax for county expenditure not exceeding one hundred and seventy-five cents on each one hundred dollars, and if they deem necessary, a tax of twenty-five cents on each one hundred dollars, to be expended for the repairs and construction of bridges within the county, as the board of county commissioners may order and direct, and such additional and special taxes as the laws of this state may authorize and require them to levy: provided, however, that whenever the board of county commissioners levy any tax, such levy must be entered on the records of their proceedings, and their clerk must deliver a certified copy thereof to the assessor, tax collector, auditor and treasurer, each of whom must file said copy in his office." (See Sess. Laws 1895, p. 101; Sess. Laws 1899, p. 254.)

Thus, instead of levying a certain number of cents on each $100 assessed valuation, as was done under the law before the amendment of 1895, a lump sum is directed to be apportioned among the counties in proportion to the taxable property of each. That made it necessary to provide for an adjustment of the rate, and that was done by an amendment of section 1411 of the Revised Statutes, which section, as amended, reads as follows: "The board of county commissioners of each county must on the second Monday of September, annually, ascertain the rate of state taxes necessary to be levied in order to secure the amount apportioned to such county by the state board of equalization as certified by the state auditor on each $100 of taxable property in said county as shown by the last assessment,

and must levy the same, and at the same time fix the rate of taxes to be levied for county purposes, designating the number of cents on each $100 of taxable property levied for each purpose, and levy the same, and at the same time said commissioners, unless provision shall have been made for the funding, refunding or exchange of the outstanding county warrant indebtedness as provided by chapter 6 of title 13 of the Revised Statutes of the state of Idaho as amended, must whenever any county shall have warrants outstanding and unpaid, for the payment of which there are no funds in the county treasury in addition to other taxes provided by law, if such warrants amount to a sum equal to five per cent or more of the value of the taxable property of such county as shown by the last preceding assessment, levy a special tax of ten mills on the dollar as shown by such preceding assessment; if such warrants amount to a sum equal to four per cent and less than five per cent of such taxable property they must levy a special tax of eight mills on the dollar as shown by such preceding assessment; if such warrants amount to a sum equal to three per cent and less than four per cent of such taxable property, they must levy a special tax of six mills on the dollar as shown by such preceding assessment; if such warrant amount to a sum equal to two per cent and less than three per cent of such taxable property, they must levy a special tax of four mills on the dollar, as shown by such preceding assessment; if such warrants amount to one per cent and less than two per cent of such taxable property, they must levy a special tax of two mills on the dollar as shown by such preceding assessment; and if such warrants amount to less than one per cent of such taxable property, then they must levy such special tax on the dollar as shown by such preceding assessment as shall be sufficient to pay such warrants. All moneys arising from such special tax shall be placed in a special fund for the redemption of such warrants which shall be paid exclusively, out of said fund which shall be known as the warrant redemption fund. All moneys in the county treasury at the end of each fiscal year, not needed for current expenses and applicable thereto, shall be transferred to said warrant redemption fund."

That section, as amended, commands the board of county commissioners to "ascertain the rate of state taxes to be levied in order to secure the amount apportioned to such county," etc., and to levy the same. It is contended by counsel for the appellants that the power to tax cannot be thus delegated, and that it is elementary that the power to tax on a sliding scale, to be determined by an administrative or ministerial set of officers, cannot be delegated, and that the power of the board in this case is to fix the rate in the proportion that the sum assessed by the state board of equalization bears to the assessed valuation of the county, and that the board of county commissioners are not authorized, and cannot determine, under our revenue laws, that it may require one or ten per cent additional to cover delinquencies; and in support of that contention cite *Houghton v. Austin,* 47 Cal. 646.

The California statute passed upon in that case delegated the power to make allowance for delinquencies to the state board, and not to the county board. It was there held to be a delegation of legislative power to authorize the state board to consider delinquencies when fixing the rate of the state tax. In *San Francisco etc. R. Co. v. State Board of Equalization,* 60 Cal. 34, the decision in the Houghton case was cited with approval, and it is stated that the statute then before the court authorized an addition of twelve per cent to cover delinquencies. The court said: "Twelve per cent is as definitely fixed as is any portion of the tax levied by the law-making power." In the former case the rate to be levied for delinquencies was not fixed by the legislature, and in the latter it was fixed. And the real contention in the case at bar by counsel for the appellant is that, as the legislature has failed to fix the rate to be levied to cover any delinquency that may arise, the county board has no power to fix a rate for that purpose.

It might be urged that if the rate to cover delinquencies is left to the county boards, and a different per cent be levied by one board than that levied by another, the rate levied for state purposes would not be uniform in all of the counties. In many of the states the state tax is apportioned between the counties, the same as it is done under our present law, and in

some of those states, if not in all, the legislature has directed the county boards to levy a certain per cent to cover any delinquency. In Illinois, the governor, auditor, and treasurer were authorized to fix such a rate per cent as would produce the net amount required, after deducting commissions and probable losses in the collection of the revenue. (*Edwards v. People*, 88 Ill. 340; *Union Trust Co. v. Weber*, 96 Ill. 357.) And in New York the board was authorized by statute to levy three per cent additional to cover delinquencies. (*New York v. City of Davenport*, 92 N. Y. 604.)

Counsel for appellants concede that the legislature has the power to direct the board to make a levy to cover any delinquency that may arise, but contend that it has failed to do so, and for that reason the board has no power to make any levy for that purpose, as section 1733 of the Revised Statutes prohibits the board from levying any taxes except such as are authorized by law. It is further contended by counsel for appellants that the intent of the legislature was that the state's proportion of all delinquent taxes must be paid to the state whenever the property sold at delinquent tax sales is redeemed or otherwise disposed of, and that that intent is found expressed in section 1554 of the Revised Statutes, as amended by Laws 1899, page 267, which section provides, *inter alia*, as follows: "Whenever property sold to the county pursuant to the provisions of this chapter shall be redeemed, the moneys received on account of such redemption shall be distributed between the state and the county."

It is suggested by the attorney general that the above-quoted provision of section 1554 is, in effect, repealed by the provisions of sections 1410 and 1411 of the Revised Statutes, as amended, and that said provision is a part of the former system of taxation. While it is true that said provision was a part of our former system of taxation, which was superseded and repealed in 1895, it is also true that said section 1554 was amended on February 16, 1899, at the last session of the legislature; and we find nothing in section 1410, as amended March 13, 1899, in conflict with said above-quoted provision of section 1554, and no repeal thereof, in terms or by implication.

It is contended by the attorney general, on behalf of the state, that when the county becomes the purchaser at a delinquent tax sale it should pay the tax due the state the same as any other purchaser. That might be true if the law-making power had, by proper enactment, so directed. But the difficulty is, it has not so directed, and has directed that, whenever property sold to the county pursuant to law shall be redeemed, the moneys received on account of such redemption shall be distributed between the state and the county. If that provision is not a satisfactory revenue producer for the state, and fails to realize to the state its just proportion of the taxes levied, it is a subject for the legislature to consider and change; the courts have no power in the premises.

We are of the opinion that the state is not entitled to recover from the county its proportion of the delinquent taxes until the same is collected by the county by the redemption or other disposition of the property struck off to the county for such delinquent taxes. It is the duty of the county treasurer to turn over to the state its proportion of delinquent taxes, together with its proportion of the penalties and interest, whenever the same is received by him, and unless he does so the state has its action against him to recover the same. As the complaint fails to allege that the sum claimed by the state has been collected by the county, it fails to state a cause of action, and for that reason the court erred in overruling the demurrer. The judgment must be reversed, and the cause remanded, with instructions to the trial court to sustain the demurrer, and for further proceedings consistent with the views expressed in this opinion.

Huston, C. J., and Quarles, J., concur.