TOWN OF AMHERST, Plaintiff, *v.* COUNTY OF ERIE and Others, Defendants.

Supreme Court, Erie County, April 28, 1932.

*Carlton E. Ladd*, for the plaintiff.

*George L. Grobe, County Attorney* [*M. Edwin Merwin* of counsel], for the defendants.

*Herbert A. Hickman, Assistant Corporation Counsel of City of Buffalo*, as *amicus curiæ*.

NOONAN, J.   This is a suit in equity brought for the purpose of establishing liability on the part of the county of Erie to the town

of Amherst, to pay to the town the amount of the taxes assessed against property in the town of Amherst for general town purposes and for local or special district assessments in the town which were returned by the town receiver of taxes to the county treasurer as uncollected in the year 1931, and on account of which the property against which the assessments were spread was put up for sale by the county treasurer at the annual tax sale in that year, which properties were not actually bid in by any purchaser. The amount of the liability as claimed by the town is $205,141.41. The county counterclaims for the county taxes collected by the receiver of taxes and paid to the supervisor, less the town taxes collected by the county treasurer.

A proper understanding of the questions involved requires a review of the statutes relating to the assessment, levy and collection of taxes for town, county and State purposes, and of the actual practice which has heretofore been followed under those statutes.

The town of Amherst is organized and operates under articles 24 and 24-A of the Town Law, as amended, and contains ninety-six special localities where local improvements for various purposes have been established. The county of Erie carries on its operations in respect of the assessment, levy and collection of taxes under a special act, to wit, chapter 135 of the Laws of 1884, as amended by chapter 383 of the Laws of 1909. Special reference will be made to the pertinent provisions of this act in connection with the questions herein involved as they arise.

Under the County Law, section 12, subdivisions 2, 3 and 4, it is made the duty of the board of supervisors of the county to " Audit all accounts and charges against the county, and direct annually the raising of sums necessary to defray them in full.

" Annually direct the raising of such sums in each town as shall be necessary to pay its town charges.

" Cause to be assessed, levied and collected, such other assessments and taxes as shall be required of them by any law of the state."

Section 462 of the Town Law (as amd. by Laws of 1909, chap. 462) provides that town boards created under article 24 of the Town Law shall possess and exercise all the powers and be subject to all the duties now or hereinafter imposed by the general laws of this State upon a town superintendent of highways and upon town board and boards of health within such towns. Section 148 of the Town Law (as amd. by Laws of 1930, chap. 573) provides for the making up of the tax budget of the town and directs that the board of supervisors of the county shall levy and cause to be raised by tax upon the taxable property in the town the amount of the tax budget.

The Special Erie County Tax Act (Laws of 1884, chap. 135),

section 1, requires that when the board of supervisors shall have perfected the assessment rolls they shall be delivered to the town collector [now referred to as receiver of taxes] of taxes with a warrant for their collection. The warrant is required by section 2 to be in such form as to permit the receipt from the taxpayer of the whole of the tax with collection fees only and does not permit the collection of any lesser sum. The receiver of taxes is required by section 4 of the act to dispose of the taxes collected by him as follows: " And from the moneys so collected the collector [now called receiver of taxes] shall pay, *first*, to the supervisor of the town such sum as shall have been raised for the support of highways and bridges therein, and returned highway taxes; *second*, to the supervisor of the town all moneys raised to defray other town expenses; *third*, to the treasurer of the county, the residue of the moneys so collected."

Article 24 of the Town Law provides for the making of certain local improvements and for the establishment of certain special districts, such, for example, as sewer districts. The cost of such improvements is required to be assessed against the property benefited and the town is authorized to borrow money and issue obligations in order to defray such cost, which obligations shall be a town charge. Ultimately, however, the cost is to be collected out of the property included within the special districts or benefited by the local improvement. Such assessments are included in the town budget, together with sums necessary to be raised for general town expenses.

The procedure provided for by law is, therefore, that the town board shall each year make up the town budget, including assessments for local improvements and special districts and general town expenses, and present the same to the board of supervisors of the county, who are required to assess the amount thereof against the taxable property in the town. No option is given to the board of supervisors to depart from the town budget as submitted by the town board. The board of supervisors then completes the assessment rolls by adding the amounts necessary to be assessed on account of other charges, such as county and State taxes, which the county is required by law to raise, and the rolls thus completed must be delivered to the town receiver of taxes with a warrant for their collection. The receiver of taxes is then required to proceed with the collection of the taxes, to make returns of the amounts collected to the county treasurer from time to time, and finally, on the first day of May succeeding the delivery of the rolls and warrant to him, to make a final accounting to the county treasurer and return the rolls to the latter with a full state-

ment of all unpaid taxes. Provision is made for extending the time for the receiver of taxes to make his final return for periods not exceeding sixty days for any one extension and not in the aggregate extending beyond the date in November which may be fixed for a sale of the property assessed for unpaid taxes.

We have seen that by section 4 of the act the receiver of taxes is required to pay to the supervisor of the town such sum " as shall have been raised " for highways, bridges, returned highway taxes and other town purposes and to pay the balance to the county treasurer. The interpretation of this provision seems clear. " Raised " means " collected." Webster defines the word " raised " as follows: " to bring together; to get together or obtain for use or service; to gather; to collect; to levy; as to raise money to raise an army." He defines " levy " thus: " to assess and collect by authority or force; as to levy taxes or tribute." (See, also, *New York & Rosendale Cement Co.* v. *Davis*, 173 N. Y. 235, affg. *N. Y. & R. Cement Co.* v. *Keator*, 62 App. Div. 577.) The obligation, therefore, of the receiver of taxes is to pay over to the supervisor the amounts collected for the purposes specified. There can be no difficulty about his doing this for the reason that the assessment rolls show what portion of the tax assessed against each parcel is assessed for the various purposes for which taxes are raised. Thus, special district assessments are included in separate columns, assessments for general town purposes are segregated, and so with county, State and school taxes. It is, therefore, a mere matter of computation for the receiver of taxes to determine what proportion of the whole sum collected by him was collected for town purposes and what proportion for other purposes, and it is his plain duty under the law to pay to the supervisor only the amount actually collected for town purposes and to pay the remainder to the county treasurer.

Heretofore, the actual practice in the collection of these taxes has not been in accordance with the provisions of law. After the assessment roll has been completed and delivered with the warrant for collection to the receiver of taxes, the latter has proceeded with his collections and has turned over the moneys collected by him to the supervisor of the town up to the amount of the town budget without reference to the purposes for which the taxes so collected were paid, thus laying the burden of any deficit arising from non-payment of taxes upon the county and giving to the town the full amount of its budget. In the year 1931, however, the collections made by the receiver of taxes for the town of Amherst were not only insufficient to pay both town and county budgets, but fell short of the amount assessed for town purposes by the sum of $205,141.41. The receiver of taxes, following the former practice,

paid the whole amount of his collections to the supervisor of the town except the sum of $25,507.21 collected by him on account of returned school taxes which he paid to the county treasurer. After the receiver of taxes made his accounting and returned the roll to the county treasurer, and before the annual tax sale, the county treasurer collected from taxpayers in the town of Amherst upon the taxes so assessed the sum of $146,882.59. The whole amount of the 1931 tax roll for the town of Amherst for all purposes, including State, county and town taxes, was $1,170,695.74, of which the State and county taxes, including returned school taxes, were the sum of $257,316.09 and the remainder, $913,379.65, was the amount assessed for town purposes, including the local and special district assessments. The amount of the collections made by the receiver of taxes and paid over to the town supervisor was $708,238.24, leaving the amount of the deficit in the town budget as above stated, to wit, $205,141.41.

If the receiver of taxes had proceeded in accordance with law, he would have paid to the supervisor such proportions of the collections made by him as the assessment for town purposes bore to the total assessment, and he would have paid the remainder of his collections to the county treasurer.

If the plaintiff's contention that the county must pay to the town the full amount of the town budget as spread on the assessment rolls. whether collected or not, is correct, the failure of the receiver of taxes to pay over his collections, as provided by law, would make no material difference, for if he had divided his payments properly between the supervisor and the county treasurer, the deficit in the amount payable to the supervisor of the town would have been increased by the amount paid to the county treasurer, and the liability of the county to the town would have been correspondingly enlarged. If, however, the county is not under a liability to pay to the town any greater sum than the amount collected by the county treasurer for town purposes, the result will be that the county is entitled to recover from the town upon the counterclaims set forth in the answer the amount collected by the receiver of taxes and payable by him to the county treasurer under the law, diminished by the amount collected by the county treasurer for town purposes. It thus appears that the vital question in this litigation is whether the county is required to pay to the town the full amount assessed on the rolls for town purposes, including the general town tax and the taxes assessed for local improvements and special districts.

The contention of the plaintiff is based upon the language of section 15 of the Special Erie County Act (Laws of 1884, chap. 135,

as amd. by Laws of 1909, chap. 383) as follows: " In all cases where no bid shall be made on a lot or parcel of land so offered for sale, for an amount or sums sufficient to pay the said tax, fees, interest and charges of sale, or if any purchaser of any land sold pursuant to the provisions of this act shall neglect or refuse to pay the amount of his bid or bids within the time prescribed, said premises shall be deemed to have been sold to and purchased by the county of Erie."

The plaintiff claims that as the county is made the purchaser on the sale, it becomes bound to pay for the property purchased. The county claims that the provision of law quoted is merely a step in the process of collecting the tax and that the county becomes the purchaser of the lands as a representative of those interested in the collection of the tax, namely, the town, the county and the State, and that no obligation is imposed upon the county to pay to the town the taxes for which the properties are sold until those taxes are collected. This question involves both interpretation and construction of the statute, interpretation of the words used and construction as to its purpose in the light of the statute as a whole, and the ends sought to be attained. The interpretation of the statute is not difficult. It is plain that the word " purchased " is used in its vernacular and not its legal acceptation.. The other words are plain of meaning, so that the import of the quoted provision is clearly seen to be that in the case of lands put up for sale for which there are no bidders, the county becomes the buyer of them by operation of law. The construction of the statute is less simple; whether under its terms there is imposed upon the county an obligation to pay for the lands so bought depends upon the meaning to be given to the statute in its entirety in the light of its general purposes and not upon the construction of the quoted provision considered separately and apart. If we were to confine ourselves to a construction of the quoted words as they have been interpreted above, we should readily reach the conclusion that as the county is made the buyer of the lands, the law imparts an obligation to pay the purchase price, but the question is not so readily disposed of as this.

The general purpose of the act is to provide machinery for the collection of taxes and to make that machinery uniform for the entire county, so far as concerns taxes returned by the town collectors uncollected. By section 11 of the original act (Laws of 1884, chap. 135), which remains unaffected by the amending act of 1909, the treasurer of Erie county is expressly directed to pay to the State Treasurer the whole amount of any State tax imposed upon property in the county, whether collected or not, to enable it to make such payment. There is no such express provision in the

case of taxes assessed for town purposes. Section 30 of the act, as amended, provides that the moneys received by the county treasurer upon the sale of real estate for taxes shall be applied in the same manner as if they had been paid to him by the collectors. This amounts to an express provision that where there is a deficit in the collection of the taxes assessed for town purposes on the part of the receiver of taxes, the county treasurer shall pay to the town out of moneys actually received by him from the sale of land for taxes, the proportion thereof applicable to town purposes, a provision which is in contrast with the provision relating to taxes for State purposes to which reference is made above.

Considering the special Erie county statutes of 1884 and 1909, the conclusion is forced upon us that they are designed for the purpose of establishing a system of procedure for the collection of taxes for the county of Erie, and bearing in mind the provisions of those acts above referred to requiring payment to the State of the whole amount of the assessment for State purposes and the lack of any corresponding provision as to assessments for town purposes, the provision as to the distribution of taxes collected by the town receiver of taxes, and the provision as to the distribution of taxes received by the county treasurer, together with the fact that there is no express provision that the county shall pay for lands put up for sale for unpaid taxes and not actually bid in by it, the only logical result is that the provision of the statute to the effect that such lands shall be deemed to be sold to the county is merely a step in the collection of the taxes and that the county is deemed the purchaser, not only in its own right, but as a representative of those to whom the taxes are due, namely, the county and the town. This construction is borne out by the provisions of section 30 of the act of 1884, as amended by the act of 1909, requiring application of the fees, interest and charges received on the sale in the like manner as the amount received for the unpaid taxes. If the county were the absolute purchaser at the tax sale, all of the money received would belong to it and it would only be liable to the town for the amount assessed for town purposes and not for the additions.

The plaintiff makes an argument to the effect that the towns cannot operate without the payment of their budgets, and that since the collection of taxes is taken out of their hands and put in the hands of the county, the county should be required to pay the amount of the town budgets and reimburse itself from the lands sold for unpaid taxes. This would place the entire burden upon the county. The equitable method would seem to be that where there is a deficit in the collection of taxes, it should be borne

by the county and the towns in proportion to the amounts of their respective budgets, and that they should share in the like proportion in any money collected from the property put up for sale and that the purpose of the act is merely to constitute the county treasurer the agent of both county and towns for the collection of the unpaid taxes, thus giving no preference to either. The county cannot operate without the money to meet its budget any more than the towns can.

The plaintiff's construction of the special acts referred to would require the court to insert into the act a provision that the county should pay for the lands deemed to be sold to it, and a further provision that such payment, which would be a mere bookkeeping transaction, should be deemed to be money received by the county treasurer upon the sale of the lands, which it would not be in fact. It would also require the importation into the statute by implication of authority for the county to raise money by borrowing or otherwise for town purposes. Well-recognized principles of statutory construction are opposed to this view. (*Furey* v. *Town of Gravesend*, 104 N. Y. 405; *McKuskie* v. *Hendrickson*, 128 id. 555; *People ex rel. McCann* v. *Kilbourn*, 68 id. 479, 482; *P. R. T. Co.* v. *Dash*, 125 id. 93.)

The rules of construction set forth in the authorities cited are especially applicable where it is sought by construction to impose a liability where none would otherwise exist. (*Smith* v. *Boston & Albany R. R. Co.*, 99 App. Div. 94; affd., 181 N. Y. 132.)

The precise point involved in this case does not seem to have been passed upon by the courts of this State. We are referred, however, by the defendant to the cases of *Town of Iron River* v. *Bayfield County* (106 Wis. 587) and *State* v. *Ada County* (7 Ida. 261), where the same principles were involved and in each of which it was held that the sale of lands for taxes and their acquisition by the county treasurer was to be regarded as a mere step in the collection of the taxes and as not imposing a liability upon the county for the payment of the amount of the assessments to other governmental units having an interest in them. The language of the court in the Wisconsin case is peculiarly applicable to the present situation.

Having reached the conclusion that the terms of the law do not impose a liability upon the county to pay the amount of the town budget as assessed beyond the amount actually collected for town purposes, it becomes unnecessary to consider the constitutional questions which have been raised by the defendant.

Upon the facts and the law judgment is granted in favor of defendant against plaintiff, dismissing its complaint on the merits, and for a judgment on its counterclaim against the plaintiff. Prepare findings accordingly.