**Jon H. BILLIGMEIER, et al.,
Respondents,**

v.

**COUNTY OF HENNEPIN, et al.,
Petitioners, Appellants.**

No. C4–87–848.

Supreme Court of Minnesota.

Aug. 19, 1988.

Thomas L. Johnson, Charles F. Sweetland, Minneapolis, Minn., for appellants.

Kirk W. Reilly, Minneapolis, Minn., for respondents.

## OPINION

KELLEY, Justice.

Pursuant to a writ of execution following entry of judgment, the Hennepin County Sheriff made certain levies on properties alleged to be owned by the judgment debtors. Those debtors asserted exemption claims to certain of the properties levied upon. Following the levies, but before the validity of the exemption claims were judicially determined, the judgment debtors and creditor stipulated to a settlement of the judgment debt. The terms of the settlement placed the obligation on the judgment debtors to pay "any and all" sheriff's fees. The sheriff claims entitlement to statutory fees computed on the amount of the post judgment settlement. The judgment debtors disagree. They claim the sheriff is entitled to claim fees computed on the value of nonexempt property levied on and turned over to the judgment creditor. The judgment debtors commenced this declaratory judgment action and moved for summary judgment.[1] The trial court upheld the claim of the sheriff. In reversing, the court of appeals limited the reasonable sheriff's fees to the applicable percentage of the judgment debtors' nonexempt assets actually collected by the sheriff and turned over to the judgment creditors. *Billigmeier v. Hennepin County,* 415 N.W.2d 423 (Minn.App.1987). We affirm.

As the result of two lawsuits, John L. King obtained judgments against certain debtors in the amount of $600,133.21. The Hennepin County District Court issued a writ of execution which was forwarded to the Hennepin County Sheriff. At the direction of the judgment creditor's attorney, the Hennepin County Sheriff made levies on accounts in various financial institutions. The accounts levied upon contained insufficient amounts to satisfy the judgment. Therefore, again at the direction of the attorney for the judgment creditor, the sheriff levied upon four real estate parcels. The debtors subsequently asserted that certain funds in the accounts were exempt from levy on execution, and that all of the real estate was exempt under the homestead exemption laws. Before the district court could determine the validity of their exemption claims, and before an appeal of the underlying judgment which they had commenced to the Minnesota Court of Appeals could be perfected, the judgment debtors stipulated to a settlement agreement with the creditor. The stipulation obligated the judgment debtors to pay all statutory sheriff's fees due the sheriff. The sheriff claims a collection fee computed on the settlement agreement value which has been stipulated by the parties to be $365,000. So computed, his fee would be $14,600.

Following execution of the settlement agreement, the judgment creditor directed the sheriff to return all property levied upon to the debtors. The sheriff did so with the exception of retaining the $14,600,

---

1. The debtors first attempted to assert their position in a case entitled *Velie v. Willing,* Hennepin County District Court File No. 83–1231. That attempt was dismissed on jurisdictional grounds because the Hennepin County Sheriff was not a party. The debtors, thereupon, initiated the instant declaratory judgment action against Hennepin County and its sheriff. On agreed facts, the trial court sustained the sheriff's position by granting his motion for summary judgment and denying that of the judgment debtors.

which he claimed as a collection fee, from moneys in an account in Norwest Bank, Midland, N.A. The $14,600 was calculated by taking four percent of the agreed upon present value of the settlement agreement. The judgment debtors dispute that the sheriff properly computed his fees. They contend that pursuant to Minn.Stat. § 357.09 (1986) the sheriff is entitled to fees calculated on the value of nonexempt assets actually collected by the sheriff and turned over by him to the judgment creditors. Because the sheriff actually collected total nonexempt assets of $49,671.83, the debtors claim his levy fee, computed at four percent, is limited to $1,986.87.

The statutes governing fees to which a sheriff is entitled following an execution levy is Minn.Stat. § 357.09 (1986).[2] To resolve the issue raised by the conflicting claims of the parties, we must decide whether the statutory words "collection on execution after levy" limit the sheriff's entitlement to fees to four percent of the value of property actually seized and delivered to the judgment creditors, or whether they permit the sheriff to collect as his fee four percent of the agreed present value of the settlement agreement.

No Minnesota case addresses that specific issue. Hennepin County and its sheriff rely on four attorney general opinions issued between 1915 and 1944—none of which are precisely on point. In the first, issued in 1915, the attorney general concluded that when a sheriff had made a valid levy on nonexempt real estate, and, thereafter, but before sale, the debtor and creditor settled, the sheriff was entitled to a fee computed on the amount actually received by the judgment creditor. Op. Att'y Gen. 148 (Jan. 30, 1915). Three years later the attorney general concluded sim-

ilarly on substantially identical facts. Op. Att'y Gen. 145 (Dec. 14, 1918). In 1923 the attorney general opined that a sheriff was entitled to a fee computed on the market value of the land levied upon when, at the execution sale, the creditor made the sole bid on the property at a price substantially less than market value. Op. Att'y Gen. 390–C–11 (May 23, 1923). In later rulings issued in 1927 and 1944 the attorney general adhered to his 1923 ruling when the existing circumstances were similar. *See,* Op. Att'y Gen. 390–C–11 (Apr. 19, 1927); Op. Att'y Gen. 224 (Oct. 30, 1944). Although the appellants acknowledge that those opinions of the attorney general are not binding on this court, in support of their contention they invoke the historical practice by which this court has traditionally afforded careful consideration and weight to such rulings. *See, e.g., Governmental Research Bureau, Inc. v. St. Louis County,* 258 Minn. 350, 357, 104 N.W.2d 411, 416 (1960); *Mankato Citizens Tel. Co. v. Comm'r of Taxation,* 275 Minn. 107, 112, 145 N.W.2d 313, 317 (1966).

In reply, respondents argue that none of the attorney general letter rulings relied upon by the appellants involve identical or substantially similar fact situations to that existing in the instant case. To the extent the letter rulings might bear upon the issue, respondents further contend that reexamination of the foundation for the rulings (in the light of factors which have evolved in the more than four decades since the last letter ruling was issued), demonstrates the emergence of a modern policy or rationale explicating that the statutory purpose is to limit the sheriff's compensation to a fee for services performed and for risks assumed in collecting and preserving the property. Finally, respondents assert

2. The applicable statutory provisions, so far as pertinent read:

Subdivision 1. *The fees to be charged and collected by the sheriff shall be as follows, and no other or greater fees shall be charged for:*

\* \* \* \* \* \*

(3) *Collection on execution after levy,* five percent on the first $250 and three percent on the remainder;

\* \* \* \* \* \*

Minn.Stat. § 357.09, subd. 1(3) (1986) (emphasis supplied). Subdivision 8 further provides:

Counties with a population in excess of 80,000 \* \* \* are not subject to the provisions of this section, but the county board in exempt counties shall set the sheriff's fees with the advice and consultation of the sheriff.

Minn.Stat. § 357.09, subd. 8 (1986). Pursuant to subdivision 8, Hennepin County set its fee rate at four percent. Hennepin County Board, Resolution 81–7–631 (August 1, 1981).

that since the attorney general letter rulings rely upon authority from foreign jurisdictions construing statutes dissimilar from Minn.Stat. § 357.09, subd. 1(3), this court need not afford to them the traditional deference, but instead should examine anew the issue by employing the policy and rationale utilized by the courts of other jurisdictions when interpreting statutes similar to ours by probing legislative intent.

We agree with respondents' assertion that the facts in each of the attorney general letter rulings are sufficiently dissimilar to those in the instant case as to afford little direct authority supporting the appellant's position. So far as ascertainable, the predicate fact generating the inquiry addressed in each letter was a valid sheriff's levy upon nonexempt property. In none of them had a sale or settlement followed a levy on property which was the subject of an unresolved claim of exemption, nor had the sale or settlement occurred during the pendency of post trial motions or appeals.

■ When appropriate, opinions of the attorney general are entitled to careful consideration by appellate courts, particularly where they are of long standing. *Governmental Research Bureau, Inc. v. St. Louis County,* 258 Minn. 350, 357, 104 N.W.2d 411, 416 (1960). In this instance, however, because of the existence of the dissimilarity of the facts of the instant case with those in the letter rulings, the latter are not particularly helpful to us when we attempt to resolve the interpretation to be given Minn.Stat. § 357.09, subd. 1(3). The letter rulings purport to draw support from cases arising in New York, Maryland, Vermont, and Virginia.[3] None of them made any attempt to compare the statutory language of the poundage statutes which existed in those states at the time those case opinions were handed down with the statutory language found in Minn.Stat. § 357.09, subd. 1(3). Also troubling is the fact that the letter rulings omit to specifically analyze what the legislature intended when it

used the words "collection on execution" in our statute.

■ In our quest to discern the intent of the legislature, we, of course, are governed by construction rules which admonish courts that words and phrases appearing in a statute are to be usually construed according to rules of grammar and given their common and approved usage. Minn. Stat. § 645.08(1) (1986). At issue here is whether the word "collection" as used in the phrase "collection on execution after levy" has a common approved usage. We conclude it does. The word "collection" is defined in Webster's Third New International Dictionary 444 as "the act of collecting (as taxes by a tax collector)." Similarly, it means obtaining payment of a debt or claim. Black's Law Dictionary 328 (Revised 4th ed. 1971). "Collection" is correspondingly defined in Ballentine's Law Dictionary 216 (3d ed. 1961) as "the act of receiving payment of a debt * * * compelled by legal action or process." *See also Mountain States Supply Co. v. Nuttall–Allen Co.,* 63 Utah 384, 225 P. 811, 813 (1924) (moneys garnished but never applied to plaintiff's claim was never "collected"); *Town of Amherst v. Erie County,* 143 Misc. 540, 256 N.Y.S. 785, 789 (1932) (taxes actually received for town purposes are collected within meaning of statute requiring them to be paid to town supervisor). Thus, in common usage, those generally accepted definitions of "collection," as used in the statutory phrase "collection on execution after levy," indicate that before the sheriff is entitled to collect poundage, the sheriff must make "payment," in some form, to the creditor following the levy.

That holding, moreover, in our view, would be consistent with what we said in *Sharvey v. Central Vermillion Iron Co.,* 57 Minn. 216, 58 N.W. 864 (1894). Although *Sharvey* is not directly on point, we did make reference to an interpretation of the words "collection after execution on levy." In *Sharvey* at an execution sale following a valid levy on nonexempt real

---

**3.** *E.G., Alchin v. Wells,* 5 Term. 470, 101 Eng. Rep. 265 (1793); *Parsons v. Bowdoin,* 17 Wend. 14 (N.Y.1837); *Bernard v. Stevens,* 16 Am.Dec.

733 (Vt.); and *Gardner v. Neal,* 50 Va. 85 (9 Gratt. 1852).

estate, the judgment creditor bid the property "off." In the course of rejecting his claim that since no money had changed hands at the sale, there was no "collection," we there stated, "[w]hatever [the judgment creditor] acquires by the execution and *sale* is to be deemed a *collection,* not only as between [the judgment creditor] and the judgment debtor, but as between the [judgment creditor] and the sheriff." *Id.* (Emphasis supplied.) The quoted language implies that to be entitled to a fee, the sheriff must do something more than levy, for which he is separately compensated, *see* Minn.Stat. § 357.09, subd. 1 (1986): the sheriff must make a "collection." For example, in *Sharvey* the sheriff did more than make a levy; he conducted a sale, after which he delivered to the creditor title to the real estate, which, absent a timely redemption, would become absolute, or, in the case of redemption, would result in the creditor receiving money in satisfaction of the judgment. In contrast, in this case the judgment creditor received nothing as the direct result of the sheriff's levy on property claimed by the judgment debtors to be exempt.[4]

Application of a definition of "collection," as the word is commonly and ordinarily used, leads us to conclude that when the legislature employed the words "collection on execution after levy" it intended that a sheriff's entitlement to the statutory collection fee mature only when the property levied upon, or money from its sale on execution, is legally seized by the sheriff and turned over to the judgment creditor.

That conclusion finds support from cases addressing the issue in other jurisdictions. Courts of jurisdictions which have delved into legislative intent to construe statutes similar to Minn.Stat. § 357.09, subd. 1(3), have likewise arrived at a similar result. The common conclusion pervading the cases emanating from those courts is that when legislatures have enacted this type of

statute accenting "collection," they have manifested an underlying intent that fees to compensate sheriffs were to be measured primarily by the extent of services rendered and the risks incurred; and absent a collection of property, or the proceeds of sale of property, and delivery thereof to the creditor the sheriff is not entitled to statutory fees computed on any other values. Typical of this approach is *Peck v. City Nat'l Bank of Grand Rapids,* 51 Mich. 353, 16 N.W. 681 (1883). The Michigan court, when interpreting a statute which like 357.09, subd. 1(3) provides for specified compensation for the sheriff for each service rendered in furtherance of the execution, held that if the execution is withdrawn before sale in favor of a settlement, the sheriff is not entitled to a commission computed on the value of the settlement. Similarly, the Iowa Supreme Court, in *Nordyke–Marmon Co. v. Jones,* 93 Iowa 705, 61 N.W. 1085 (1895), a case having facts remarkably similar to those in the instant case, interpreting a statute allowing a sheriff a fee upon "collection," held the sheriff was not entitled to a fee because there was no sale and, therefore, no collection. *See also Vance v. Bank of Columbus,* 2 Ohio 214 (1825); *O'Shea v. Kavanaugh,* 65 Neb. 639, 91 N.W. 578 (1902); *Fiedeldey v. Diserens,* 26 Ohio St. 312 (1875); Op. Att'y Gen. 291 (Wis. June 16, 1923). Likewise, in *Campbell v. Cothran,* 56 N.Y. 279 (1874), and in *Shaw v. Brown,* 41 Tex. 446 (1874), where the underlying judgment was either reversed or reduced in amount, the courts of New York and Texas respectively denied the sheriff poundage, essentially because there had been no property, or proceeds from the sale of property, collected and delivered to the judgment creditor.

█ As the court of appeals noted in its opinion, in earlier times the livelihood of sheriffs was largely dependent upon his fees, including those collected in the course

4. It may be that the settlement between the judgment creditor and judgment debtors may have been precipitated by the levy on claimed exempt properties. However, nothing in the

record supports such a conclusion, but even if evidence doing so did exist, it would be immaterial. *See, e.g., Nordyke–Marmon Co. v. Jones,* 93 Iowa 705, 61 N.W. 1085, 1086 (1895).

of the execution process.[5] The early letter rulings of the attorney general, all issued long before 1965 when statutes became effective altering that mode of compensation substantially by substituting a procedure to compensate sheriffs for services by salary set by the county board, expressed concern that collusive manipulation by the parties to the judgment debt might result in deprivation of a substantial portion of the sheriff's livelihood. Because our present statutes provide a fee to a sheriff (which since 1965 must be remitted to the county general fund) for each step of the execution process commensurate to the type of service rendered, and since the sheriff's remuneration is now derived almost entirely from salaries established by the county board, the policy concerns articulated in the letter rulings have largely disappeared. Under present day statutes, the sheriff, and ultimately the county, receive fees commensurate with the services rendered by the sheriff and the risk incurred by his office.

In the instant case, the sheriff made valid levies on certain nonexempt accounts. Those funds were collected and turned over to the judgment creditor to apply on the judgment. That was a service performed by the sheriff; and following levy until delivery the funds may have been at risk. Therefore, the sheriff was entitled to fees computed on the value of the accounts collected and turned over. In contrast, by purporting to levy on property claimed to be nonexempt—primarily homestead realty—the sheriff performed no services resulting in a legal benefit to the creditor, and, since the property was not physically in his possession, he incurred no risk. The principle that compensation corresponds to degree of responsibility assumed by the sheriff, as well as the fact he did not complete "collection on execution following levy" bars him from successfully claiming a fee for the purported levy on the property claimed by the debtors to be nonexempt.

Accordingly, we affirm the decision of the court of appeals.

POPOVICH, Justice (dissenting).

1. Under Minn.Stat. § 357.09, subds. 1(3), 8 (1986), sheriffs may collect fees calculated as a percentage of any "collection on execution after levy." When the parties settle after levy but before adjudication of exemption claims asserted by the debtors, is the sheriff entitled to compute fees from the amount of the settlement? The trial court held that he is, following the practice endorsed by attorney general opinions dating back to 1915. I agree, and would therefore reverse the court of appeals.

2. The majority rests on construction of the word "collection," which it finds under common usage to mean payment in some form to the creditor following levy. I have no real quarrel with that analysis, but question whether it is our role to impose this new construction under these circumstances.

Though no Minnesota appellate court has addressed the question, four attorney general opinions from 1915 through 1944 ruled the sheriff's fee should be computed on the amount realized by the judgment creditor on settlement with the debtor after levy but before sale. *See, e.g.,* Op. Att'y Gen. 224 (Oct. 30, 1944). This court traditionally affords these opinions careful consideration and weight, particularly when they are long-standing. *Governmental Research Bureau v. St. Louis County,* 258 Minn. 350, 357, 104 N.W.2d 411, 416 (1960). Calculations of fees on the settlement amount has apparently been standard practice for at least 70 years; public officials have reasonably relied on this policy.

The legislature itself must have been aware of the attorney general opinions and

---

**5.** Although, in fact, sheriffs have been entitled to statutorily set minimum salaries since 1917, Act of April 17, 1917, ch. 312, §§ 1–3, 1917 Minn. Laws 447, 447–48, such salaries were just that—minimum. A far greater portion of the remuneration was derived from retained collected fees permitted by Act of April 17, 1917, ch. 312, § 6, 1917 Minn. Laws 447, 449. That is no longer the fact. Since 1965, sheriffs have been required by law to pay " * * * all fees * * * prescribed by law * * * to the county in the manner and at the times prescribed by the county board * * *." Minn.Stat. § 387.20, subd. 5 (1986) (enacted, Act of May 26, 1965, ch. 840, § 1, 1965 Minn. Laws 1560, 1562).

the policy they express, yet it failed to alter or clarify the statute despite numerous opportunities. The statute has been amended 13 times since 1913, and the language "collection on execution after levy" has remained unchanged. *See* Minn.Stat. § 5762, subd. 5 (1913). If the legislature has not seen fit to modify longstanding construction of the statute, amendment by judicial decision now seems unwarranted.

3. Nor am I convinced that the policy reasons supporting the attorney general opinions have evaporated over time. The rationale for those decisions was a concern that judgment creditors and debtors might settle just before sale and "defeat the sheriff from reaping the fruits of his official action." Op.Att'y Gen. 148 (Jan. 30, 1915). The majority notes that sheriffs formerly depended on these fees for their livelihood, but are now paid a salary which vitiates their dependence on fee income. Since 1965, however, sheriffs have been required to pay all fees over to the county. *See* Minn.Stat. § 387.20, subd. 5 (1986). I fail to understand why we should be any less concerned that the county—rather than the individual officer—might lose the "fruits" of its official action.

The majority seems to say that the sheriff, hence the county, really does nothing for the judgment creditor unless he actually delivers funds. I think this ignores the service provided when a creditor uses the sheriff's office to commence levy activities and thereby gains leverage for settlement. Limiting the fee calculation to funds actually received undervalues the county's effort. That was true in 1915 when the fee went to the officer, and it remains true today when the fee goes into public funds.

4. In my view, the legislature is the proper body to alter the long-held understanding of this statute.

COYNE, Justice.

I join in the dissent of Justice Popovich.