**CITY OF BRAINERD, petitioner, Respondent,**

**v.**

**BRAINERD INVES. P'SHIP, et al., Respondents Below,**

**Roger Anda, et al., Appellants,**

**and**

**Betty Anda, et al., Appellants,**

**v.**

**City of Brainerd, Minn., Respondent.**

**Nos. A11–644, A11–1471.**

Court of Appeals of Minnesota.

April 2, 2012.

us/ccld/PDF/ Employee_misclassification_re-

port_May2011.pdf.

George C. Hoff, Justin L. Templin, Hoff, Barry & Kozar, P.A., Eden Prairie, MN, for respondent.

Gerald W. Von Korff, Rinke Noonan, St. Cloud, MN, for appellants.

Considered and decided by WORKE, Presiding Judge; CONNOLLY, Judge; and RANDALL, Judge.

## OPINION

RANDALL, Judge.*

These consolidated appeals involve respondent city's attempt to expand a road and to pay for that expansion with special assessments on appellants' properties. In

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

appeal A11–1471, appellants challenge the legality of a petition to expand the road that was submitted by Central Lakes College pursuant to Minn.Stat. § 429.031. Appellants argue that because the college is owned by the State of Minnesota, and special assessments cannot be made against state-owned property, the district court erred by concluding that the college may be considered an "owner" for purposes of petitioning for an improvement under section 429.031. In appeal A11–644, appellants contend that the district court erred by concluding that a condemnation petition may be authorized even if the assessment process under chapter 429 is defective. Because the State of Minnesota may be considered an "owner" of property for purposes of petitioning for improvements under Minn.Stat. § 429.031, we affirm.

## FACTS

This case involves respondent City of Brainerd's (the city) pursuit of a project to reconstruct a portion of College Drive. College Drive is a two-lane road that traverses the city. Over time, College Drive has become a favored route for regional traffic across the Mississippi River. Due to the increase in traffic, the city began exploring options to reconstruct the portion of College Drive from State Aid Highway 48 to the intersection of South 5th Street and Quince Street into a four-lane divided road with a center median.[1]

Under Minnesota law, when a city council is voting on whether to adopt a resolution ordering that an improvement project be undertaken, the number of votes needed to pass the resolution depends on the circumstances. Minn.Stat. § 429.031,

---

1. The reconstruction project of College Drive will hereinafter be referred to as "the project."

subd. 1(f). If a petition in favor of the project has been submitted by owners of at least 35 percent of the property adjacent to the project, the resolution can pass with a simple majority (4–3) vote. *Id.* In the absence of such petition, a four-fifths majority (6–1) vote is needed in order for the resolution to pass. *Id.*

Initially, there was no petition supporting the project and there were not enough votes on the city council for a four-fifths majority to pass a resolution for the project to proceed. As the city explored options for the project, it became evident that city taxes or special assessments would be necessary to cover a portion of the costs to fund the project. Despite earlier reports to the contrary, properties that were adjacent to the project and that would benefit from the project would be assessed to help cover the cost of the project. Some of these properties that would be assessed are owned by appellants Roger Anda, Elizabeth J. Anda, and James H. Marin, LLC, who own apartment buildings situated on property adjoining the portion of College Drive sought to be improved.

Central Lakes College (CLC) also owns property adjoining the portion of College Drive sought to be improved. Because CLC is an instrumentality of the State of Minnesota, it was not obligated to pay any special assessments against its property in connection with the project. Nonetheless, City Engineer Jeff Hulsether sent a letter to CLC Vice President of Administrative Services Kari Christiansen asking whether CLC would pay a special assessment to cover a portion of the project. The letter recognized that under the relevant statutes, payment of a special assessment may be "somewhat optional" for CLC. But Hulsether asked: "To whatever extent you are authorized, can you provide us with something that addresses available funds, budget requests, the project's benefit to the College compared to the proposed assessment, and if the College is agreeable to paying the assessment?"

On December 17, 2009, Christiansen responded to Hulsether's letter. Christiansen stated that CLC "intends to pay the special assessments for [the project]." But Christiansen added that CLC was facing "serious budgetary pressures" and requested that the city "defer final action on the special assessments until [CLC] has the full financial picture of the impact of this project."

In September 2010, the city completed a feasibility report for the project, including a breakdown of the proposed funding. The overall cost of the project was estimated at $6.9 million. The "local share" of the project—to be paid by special assessment—was estimated at $621,200.

After receiving the feasibility report, CLC sent a memorandum to the city confirming its support for the project and stating that CLC is "willing to pay assessments for this project." A month later, CLC provided the city with a formal petition, which asserted that it was the owner of not less than 35 percent of the frontage of real property abutting on College Drive between State Aid Highway 48 and the intersection of 5th and Quince Streets, and, with reference to safety concerns, requested that said portion of College Drive be reconstructed according to the proposal approved by the city council. The petition was signed by Christiansen and the president of CLC.

On November 19, 2010, the city council, via Resolution No. 55:10, determined that CLC's petition was valid because CLC owned at least 35 percent of the frontage of the real property abutting on the portion of College Drive to be affected by the project. A public hearing was then held on December 6, 2010, where the city coun-

cil approved the project by a 4–3 vote on Resolution 58:10, and ordered that the project should proceed.

Appellants submitted a notice of appeal to the city claiming that the petition submitted by CLC was invalid because (1) CLC is not a property "owner" within the meaning of chapter 429 since, as an instrumentality of the State of Minnesota, CLC property could not be subject to special assessment for an improvement under Minn.Stat. § 435.19, subd. 2 (2010); and (2) under chapter 429 of the Minnesota Statutes, property that is not subject to special assessment cannot be counted for purposes of determining whether owners of 35 percent of affected properties had joined the petition. Thus, appellants sought an injunction to stop the project.

On February 2, 2011, appellants moved for summary judgment. In addition to the arguments described above, appellants argued that under Minn.Stat. § 435.19 (2010), CLC's petition could only be valid if there was an agreement in place between CLC and the city for CLC to pay a specified assessment. Appellants argued that because CLC had not yet entered into any agreement to pay any kind of assessment, the petition was invalid and the city should not be allowed to proceed with the project, absent a four-fifths majority vote of the city council.

After appellants moved for summary judgment, the city formally approved a settlement-and-assessment agreement, which represented the final outcome of negotiations between the city and CLC. Under the agreement, CLC acknowledged that the project provided a special benefit to CLC, that CLC was fairly assessed, and that CLC had budgeted for payment of the assessment pursuant to Minn.Stat. § 435.19, subd. 2. Thereafter, the city filed a cross motion for summary judgment, claiming that the project should be allowed to move forward because the city followed all applicable statutory provisions in approving the project.

In July 2011, the district court issued an order granting the city's motion for summary judgment, denying appellants' motion for summary judgment, and dismissing appellants' claims "in their entirety." The district court applied a plain-meaning analysis to the statute and determined that CLC was the owner of more than 35 percent of the affected real property and that the city's procedure in authorizing the special assessment by a majority vote of the city council was lawful.

In the meantime, in January 2011, the city commenced an eminent-domain proceeding under Minn.Stat. § 117.042 (2010) to acquire temporary construction easements and permanent right-of-way and drainage-and-utility easements to accommodate the project. Appellants challenged the quick-take on the basis that the city's failure to comply with the financing provisions of chapter 429 prohibited the city from conducting a taking pursuant to Minn.Stat. § 117.042. The city subsequently filed a motion in limine and a motion for a protective order to prevent the injection of the issues related to chapter 429 in the eminent-domain proceeding.

Treating the city's motion as one for summary judgment, the district court issued an order on March 8, 2011, concluding that the city did not need to comply with chapter 429 when exercising its powers of eminent domain. Thus, the district court granted the city's motions in limine and for a protective order. A public-purpose hearing was then held on March 16, 2011 related to quick-take, and the district court granted the petition the next day.

Notices of appeal were filed in both the eminent-domain proceeding and the proceeding related to appellant's chapter 429

claims. By order of this court, the appeals were consolidated.

## ISSUES

1. Did the district court err by concluding that the State of Minnesota is an "owner" of property under the plain language of chapter 429 and, therefore, it can be counted toward the 35 percent requirement for a petition for special assessments?

2. Did the district court err by concluding that a condemnation petition may be authorized even if the assessment process under chapter 429 is defective?

## ANALYSIS

"On appeal from a grant of summary judgment, we must determine whether any genuine issues of material fact exist and whether the district court erred in its application of the law." *Patterson v. Wu Family Corp.*, 608 N.W.2d 863, 866 (Minn. 2000). This court reviews a district court's decision to grant summary judgment to determine (1) whether any issues of material fact exist, and (2) whether the district court misapplied the law to the facts. *Bus. Bank v. Hanson*, 769 N.W.2d 285, 288 (Minn.2009). The reviewing court also "construe[s] the facts in the light most favorable to the party opposing summary judgment and review[s] questions of law, including the interpretation of statutes, de novo." *Bearder v. State*, 806 N.W.2d 766, 770 (Minn.2011).

Minnesota law provides that before a municipality awards a contract for an improvement, the city council must hold a public hearing on the proposed improvement. Minn.Stat. § 429.031, subd. 1(a). The statute further provides:

The hearing may be adjourned from time to time, and a resolution ordering the improvement may be adopted at any time within six months after the date of the hearing by vote of a majority of all members of the council when the improvement has been petitioned for by the owners of not less than 35 percent in frontage of the real property abutting on the streets named in the petition as the location of the improvement. When there has been no such petition, the resolution may be adopted only by vote of four-fifths of all members of the council[.]

*Id.*, subd. 1(f).

When there has been a petition submitted for an improvement that could result in special assessments being levied, the city council "shall, by resolution, determine whether or not the petition has been signed by the required percentage of owners of property affected thereby." Minn. Stat. § 429.035 (2010). If the petition is valid, allowing the improvement to go forward, "[t]he cost of [the] improvement ... may be assessed upon property benefited by the improvement." Minn.Stat. § 429.051 (2010).

Property owned by the State of Minnesota, however, is governed by separate statutory criteria. Under Minn.Stat. § 435.19, subd. 1,

[a]ny city ... or any town having authority to levy special assessments may levy special assessments against the property of a governmental unit benefited by an improvement to the same extent as if such property were privately owned.... If the amount of any such assessment, except one against property of the state, is not paid when due, it may be recovered in a civil action brought by the city or such town against the governmental unit owning the property so assessed.

The next subdivision provides:

In the case of property owned by the state or any instrumentality thereof, the governing body of the city or town may

determine the amount that would have been assessed had the land been privately owned. Such determination shall be made only after the governing body has held a hearing on the proposed assessment after at least two weeks' notice of the hearing has been given by registered or certified mail to the head of the instrumentality, department or agency having jurisdiction over the property. The amount thus determined *may* be paid by the instrumentality, department or agency from available funds. If no funds are available and such instrumentality, department or agency is supported in whole or in part by appropriations from the general fund, then it shall include in its next budget request the amount thus determined. *No instrumentality, department or agency shall be bound by the determination of the governing body and may pay from available funds or recommend payment in such lesser amount as it determines is the measure of the benefit received by the land from the improvement.*

*Id.,* subd. 2 (emphasis added).

Appellants challenge the legality of the petition submitted by CLC on the basis that CLC cannot be considered an "owner" for purposes of Minn.Stat. § 429.031, subd. 1(f), because pursuant to Minn.Stat. § 435.19, special assessments for the project cannot be made against CLC's property, which is "state" property. Appellants argue that because CLC's property is non-assessable property, it cannot be counted in determining whether the "35 percent owner rule" has been satisfied.

The goals of statutory interpretation are to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2010). In doing so, we construe words and phrases according to their plain and ordinary meaning. *Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 608 (Minn.1980); *see also* Minn.Stat. § 645.08(1) (2010). When the legislature's intent is clearly discernible from a statute's plain and unambiguous language, this court interprets the language according to its plain meaning without resorting to other principles of statutory construction. *Beecroft v. Deutsche Bank Nat'l Trust Co.,* 798 N.W.2d 78, 82–83 (Minn.App.2011).

■ The issue before us is whether CLC may be considered an "owner" for purposes of chapter 429. This chapter contains a section defining certain terms. Minn.Stat. § 429.011 (2010). But the word "owner" is not defined in this section, nor is it defined anywhere else in the chapter. Appellants contend that because the word "owner" is not defined by the chapter, the term is ambiguous.

To resolve the ambiguity in Minn.Stat. § 429.031, appellants cite three attorney general opinions that have interpreted the existing special-assessment statutes to exclude the state as an owner for purposes of the petition process under chapter 429. *See* Op. Att'y Gen. 408–c (Oct. 28, 1954) (stating that property owned by the state and committed to public use could not be subject to special assessment unless it was authorized under a specific statute, and that non-assessable property could not be included for purposes of determining whether the "35 percent owner rule" had been met); *see also* Op. Att'y Gen. 387–B–10 (June 29, 1954) (concluding that non-assessable city property could not be counted in determining whether the "35 percent owner rule" had been satisfied, even if the city had voluntarily agreed to pay, out of its own funds monies for the benefit deemed to flow to it from the petitioned-for improvement); Op. Att'y Gen. 56 (June 30, 1936) (citing a Nebraska case for the proposition that "public policy should deny the city the right to petition itself to carry on the work of public im-

provement; that the right to petition should be confined to the individual taxpayer who bears the greater part of the burden imposed by the special assessment"). Appellants argue that these opinions, when read in conjunction with the legislative history of chapter 429, support their position that the state cannot be considered an "owner" for purposes of the "35 percent owner rule." Specifically, appellants point out that when the legislature substantially amended chapter 429 in 1953, it looked to the 1936 attorney general opinion in adopting the statutory language. For example, appellants point out that "section 429.031 incorporated the very language interpreted by the [a]ttorney [g]eneral's opinion." Thus, appellants urge us to follow the attorney general opinions in holding that CLC's petition was invalid under chapter 429.

■■■ "When appropriate, opinions of the attorney general are entitled to careful consideration by appellate courts, particularly where they are of long standing." *Billigmeier v. Hennepin Cnty.*, 428 N.W.2d 79, 82 (Minn.1988). In fact, in some limited and carefully delineated situations, the legislature has by statute expressly given attorney general's opinions the force of law unless and until a court of competent jurisdiction overrules them. *See N. States Power Co. v. Williams*, 343 N.W.2d 627, 632 (Minn.1984). For example, Minn.Stat. § 8.07 (2010) grants attorney general's opinions the force of law regarding the regulation of certain school matters. *In re Admonition No. 99–42*, 621 N.W.2d 240, 244 n. 4 (Minn.2001). Nonetheless, it is also well settled that "[o]pinons of the [a]ttorney [g]eneral are not binding on the court." *Star Tribune Co. v. Univ. of Minn. Bd. of Regents*, 683 N.W.2d 274, 289 (Minn.2004) (declining to follow attorney general opinion); *Billigmeier*, 428 N.W.2d at 81–82. And the legislature has not given attorney general opinions regarding chapter 429 the force of law.

Here, although the attorney general opinions cited by appellants support their position, they conflict with the plain language of the statute. The statute allows the "owners" of the applicable properties to petition for improvements. Minn.Stat. § 429.031, subd. 1(f). Without a statutory definition, the word "owner" is construed according to the rules of grammar and according to its "*common and approved usage.*" Minn.Stat. § 645.08(1) (emphasis added). The common definition of the word "owner" is "[o]ne who has the right to possess, use, and convey something." *Black's Law Dictionary* 1214 (9th ed.2009). It is undisputed that CLC is the record owner of at least 35% of the real property frontage abutting College Drive. Therefore, under the plain language of chapter 429, CLC is an "owner" for purposes of the "35 percent owner rule."

Appellants argue further that public policy supports their position that the state should not be considered an "owner" for purposes of the "35 percent owner rule." To support their claim, appellants point out that under the district court's interpretation of chapter 429, the state could petition for assessments against private property owners for improvements where the state's goal is to serve a non-local purpose. The state could then keep its costs at a minimum, or perhaps decline to pay the assessments. *See* Minn.Stat. § 435.19, subds. 1, 2.

We acknowledge that appellants' argument makes sense in light of the current statutory framework that appears to grant the state wide discretion to determine if, and how much, it should be assessed. This statutory framework could lend the appearance of unfairness. But, there is a process in which the state can be brought

in to pay for the necessary improvements. *See* Minn.Stat. § 435.19, subd. 1. There is no indication here that CLC is not paying its fair share. The feasibility report provides that the "Local Cost share" for the project is $621,200, and the record reflects that CLC was in contact with the city and indicated to the city that it was willing to pay its share for the improvements. Consequently, there is nothing in the record to indicate that CLC is "sticking it" to the private landowners who will be assessed for the project, or that CLC is getting "more bang for their buck." Moreover, as an owner of property along College Drive, it is imperative that CLC has standing to look out for the health and welfare of its business and the people associated with the business. Appellants' interpretation of chapter 429 would strip CLC of this standing. Therefore, we conclude that the district court properly determined that CLC's petition was valid.

Because we hold that CLC's petition was valid, we need not address appellants' challenge to the district court's approval of the city's petition under chapter 117 to conduct a taking of the land required for the project, which appellants' admit "necessarily rests upon our contention that the state cannot serve as a local improvement project petitioner."

### DECISION

Under the common definition of the word "owner," CLC is the owner of at least 35 percent of the real property frontage abutting College Drive for purposes of Minn.Stat. § 429.031. The district court did not err by concluding that CLC's petition under Minn.Stat. § 429.031 was valid.

**Affirmed.**