CITY OF BRAINERD, Respondent
(A11–0644),

v.

BRAINERD INVESTMENTS PART-
NERSHIP, et al., Respondents
Below (A11–0644),

Roger Anda, et al., Appellants
(A11–0644);

Betty Anda, et al., Appellants
(A11–1471),

v.

City of Brainerd, Minnesota,
Respondent (A11–1471).

Nos. A11–0644, A11–1471.

Supreme Court of Minnesota.

March 13, 2013.

Gerald W. Von Korff, Rinke Noonan, Saint Cloud, Minnesota, for appellants.

George C. Hoff, Justin L. Templin, Hoff, Barry & Kozar, P.A., Eden Prairie, Minnesota, for respondent.

GILDEA, C.J., G. BARRY ANDERSON, PAUL H. ANDERSON, WRIGHT, JJ.

## OPINION

GILDEA, Chief Justice.

This case involves a resolution by respondent City of Brainerd ("City") to expand a road and pay for a portion of the improvement with special assessments. Appellants Roger and Elizabeth Anda, and James H. Martin, LLC ("appellants"), who own property adjacent to the road to be improved, challenge the legality of a petition for the improvement submitted by Central Lakes College ("CLC"). Appellants argue that because CLC is an instrumentality of the State of Minnesota, and the State cannot be bound by special assessments of its property, CLC is not an "owner" of property permitted to petition for an improvement under Minn.Stat. § 429.031, subd. 1(f) (2012). The district court concluded that CLC is an "owner" and granted the City's motion for summary judgment. The court of appeals affirmed. *City of Brainerd v. Brainerd Invs. P'ship*, 812 N.W.2d 885, 892 (Minn. App.2012). Because we conclude that the State is an "owner" of property under the plain language of the statute, we affirm.

This case arises from the City's decision to improve College Drive from a two-lane road with a turn lane into a four-lane road with a center median ("the project"). As the City reviewed funding options, it became clear that either city taxes or special assessments would be necessary to cover a portion of the costs of the project. The Brainerd City Council ("City Council") indicated that the owners of the land adjacent to the project would benefit from the improvement to College Drive and, therefore, could be subject to special assessments. Because appellants' property runs adjacent to the project, it falls within the area the City Council proposed to assess.

Under Minnesota law, when a municipality adopts a resolution to fund an improvement by special assessments, the number

of votes needed depends on the circumstances. *See* Minn.Stat. § 429.031, subd. 1(f). If the owners of at least 35 percent of the property adjacent to the improvement submit a petition in favor of the improvement, a municipality can pass a special assessment resolution by a simple majority of the City Council ("35 percent owner rule"). *Id.* But absent such a petition, the vote required to pass a special assessment resolution is a four-fifths majority of the City Council. *Id.* In the present case, no petition was initially submitted to support the project and there were not enough votes on the City Council to pass a resolution with a four-fifths majority.

Because the City Council did not have a four-fifths majority, the City Engineer sent a letter to the Vice President of Administrative Services for CLC ("Vice President") inquiring whether CLC intended to pay special assessments to fund the project. CLC owns over 39 percent of the property adjoining the project, but cannot be obligated to pay special assessments because CLC is an instrumentality of the State. *See* Minn.Stat. § 435.19, subd. 2 (2012). The Vice President responded, stating that CLC intended "to pay the special assessments," but requested that the City "defer final action on the special assessments until [CLC had] the full financial picture of the impact of this project."

On September 15, 2010, the City Engineer completed a feasibility report for the project. The estimated total cost of the project was $6.9 million, with an estimated cost to the City of $621,200 that was to be funded by special assessments. After the feasibility report was complete, the Vice President sent a memorandum to the City confirming CLC's support of the project. The Vice President stated that "[t]he primary driver for this project is safety, and that is the reason why Central Lakes College is willing to pay assessments for this project."

On November 15, 2010, CLC formally petitioned the City to reconstruct College Drive. CLC asserted that it is "the owner of not less than 35% in frontage of real property abutting" the project. The City Council validated the petition and, on December 6, 2010, resolved to pay for the project with special assessments by a 4–3 vote.

In response to the resolution, appellants initiated an injunction action. Appellants claimed that the petition was invalid and that the City Council did not pass the resolution by the required four-fifths majority.[1] Specifically, appellants argued that, pursuant to Minn.Stat. § 435.19, subd. 2, "property owned by the State may not be assessed" because "any payment of costs for a project benefitting State property is merely discretionary." Because state-owned property is not subject to special assessment absent the State's consent, appellants argued that the State, and therefore CLC, is not an "owner" of land permitted to petition under section 429.031, subdivision 1(f).[2]

---

1. The City also commenced an eminent domain proceeding pursuant to Minn.Stat. § 117.042 (2012). The district court granted the City's quick-take petition. The court of appeals consolidated the case with appellants' appeal at issue here, and affirmed. *City of Brainerd*, 812 N.W.2d at 888–89, 892. The City's quick-take petition is not at issue in this appeal.

2. After appellants commenced this action, the City and CLC executed a final agreement that bound CLC to pay an assessment amount of $359,882.80. The City and CLC agreed that "the Petition represents the College's agreement to pay an assessment."

Both parties filed motions for summary judgment, and the district court granted the City's motion and dismissed appellants' claims. The court concluded that the plain and unambiguous meaning of the word "owner" in Minn.Stat. § 429.031, subd. 1(f), includes the State. The court therefore determined that CLC is the owner of more than 35 percent of the real property abutting the project and upheld the City's adoption of the special assessment resolution.

The court of appeals affirmed. *City of Brainerd,* 812 N.W.2d at 892. Following the same reasoning as the district court, the court of appeals concluded that Minn. Stat. § 429.031, subd. 1(f), is not ambiguous because the word "owner" must be "construed according to the rules of grammar and according to its '*common and approved usage.*'" *Id.* at 891 (quoting Minn.Stat. § 645.08(1) (2012)). Using the common definition of the word "owner"— "[o]ne who has the right to possess, use, and convey something"—the court of appeals held that the plain language of Minn. Stat. § 429.031, subd. 1(f), includes the State as an "owner." *Id.* (quoting *Black's Law Dictionary* 1214 (9th ed.2009)). We granted appellants' petition for review.

## I.

The issue in this case is whether the State of Minnesota is an "owner" of real property for the purpose of petitioning for improvements pursuant to Minn.Stat. § 429.031, subd. 1(f). Appellants contend that the court of appeals improperly focused on "a single word, 'owner,' without considering [the] context and statutory purpose" of the 35 percent owner rule. To support their argument, appellants rely on three attorney general opinions, as well as other extrinsic sources, to illuminate what they contend is relevant legislative intent. The City argues that CLC is an "owner"

under the plain language of the statute and, therefore, CLC can petition the municipality for an improvement funded by special assessments.

■■■ The interpretation of a statute is a question of law that we review de novo. *Clark v. Lindquist,* 683 N.W.2d 784, 785 (Minn.2004). The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Minn.Stat. § 645.16 (2012). When legislative intent is clear from the statute's plain and unambiguous language, we interpret the statute according to its plain meaning without resorting to other principles of statutory interpretation. *Id.*

We turn first to the statute under which CLC submitted the petition for the improvement to College Drive—Minn. Stat. § 429.031 (2012). Under this section, before a municipality awards a contract for an improvement, the municipality must hold a public hearing. Minn.Stat. § 429.031, subd. 1(a). Once the hearing is held, the number of votes needed to adopt a resolution for an improvement depends on whether property owners petitioned for the improvement. *Id.,* subd. 1(f). If "the improvement has been petitioned for by the owners of not less than 35 percent in frontage of the real property abutting on the streets named in the petition as the location of the improvement," then "a resolution ordering the improvement may be adopted" with a "vote of a majority of all members of the council." *Id.* But in the absence of a petition, "the resolution may be adopted only by vote of four-fifths of all members of the council." *Id.* When a petition is submitted, the municipality must determine whether the petition was signed by the required percentage of owners. Minn.Stat. § 429.035 (2012). If the municipality validates the petition, the improvement may go forward with a majority vote, Minn.Stat. § 429.031, subd. 1(f), and the

cost of the improvement "may be assessed upon property benefited by the improvement," Minn.Stat. § 429.051 (2012).

The parties dispute whether CLC is an "owner" for the purpose of the petition process set forth in subdivision 1(f). The statute states that "owners" of real property abutting a project may petition for an improvement. Minn.Stat. § 429.031, subd. 1(f). The statute does not provide a definition for the word "owner," but we are required to construe the word according to its "common and approved usage." Minn. Stat. § 645.08(1). The common definition of the word "owner" is "[o]ne who has the right to possess, use, and convey something." *Black's Law Dictionary* 1214. Appellants do not dispute that CLC is the record owner of over 39 percent of the property abutting the College Drive project.

■ But appellants contend that CLC cannot be an owner for the purpose of section 429.031, subdivision 1(f) because the State's property cannot be assessed. Appellants note that while the statutory scheme in Minn.Stat. ch. 429 (2012) governs most special assessments, a different chapter governs public property—Minn. Stat. ch. 435 (2012). Under chapter 435, when property is owned by the State or its instrumentality, "the governing body of the city or town may determine the amount that *would have been assessed had the land been privately owned.*" Minn. Stat. § 435.19, subd. 2 (emphasis added). However, "[n]o instrumentality, department or agency shall be bound by the determination of the governing body and may pay from available funds or recommend payment in such lesser amount as it determines is the measure of the benefit received by the land from the improvement." *Id.* Thus, while a municipality can determine the amount that would be assessed against state-owned property if it

were privately owned, the State cannot be required to pay a special assessment. Because the State cannot be required to pay a special assessment, appellants argue that the State cannot be an owner for the purpose of petitioning for an improvement funded by special assessments. We disagree.

■ The Legislature did not limit the petition process in Minn.Stat. § 429.031, subd. 1(f), only to those owners obligated to pay a special assessment. The Legislature did not make any distinctions among owners in section 429.031, subdivision 1(f), except to require that the owners of at least 35 percent of the property abutting an improvement bring the petition. Moreover, the Legislature has demonstrated that when it intends to treat property owned by the State differently from privately-owned property, the Legislature knows how to make that distinction clear. *See, e.g.,* Minn.Stat. § 435.19, subd. 2 ("In the case of property owned by the state or any instrumentality thereof...."). Because the Legislature has shown the ability to distinguish between privately-owned property and state-owned property, appellants' interpretation of the word "owner" essentially adds words to a statute "that [were] purposely omitted or inadvertently overlooked." *Premier Bank v. Becker Dev., LLC,* 785 N.W.2d 753, 760 (Minn. 2010). We cannot add words of qualification to the statute that the Legislature has omitted. *See State v. Carufel,* 783 N.W.2d 539, 545 (Minn.2010) ("[T]he court cannot add words to a statute not supplied by the [L]egislature.").

■ In urging a different construction, appellants look to extrinsic sources. Appellants rely on three attorney general opinions interpreting section 429.031, subdivision 1(f) (or its predecessor provision) that conclude that the State cannot be an "owner" for the purpose of signing a peti-

tion for an improvement funded by special assessments. *See* Op. Att'y Gen. No. 56, at 133–35 (June 30, 1936); Op. Att'y Gen. No. 387–B–10, at 1–5 (June 29, 1954); Op. Att'y Gen. No. 408–c, at 1–2 (Oct. 28, 1954). And appellants argue that the purpose of the statute, and the circumstances under which the statute was enacted and subsequently amended, provide evidence that the Legislature did not intend the State to be an "owner" for the purpose of petitioning for an improvement.[3] We do not resort to extrinsic sources when interpreting a statute unless the statute is ambiguous. *See* Minn.Stat. § 645.16 (listing sources from which courts may ascertain legislative intent "[w]hen the words of a law are not explicit"); *see also Gov't Research Bureau, Inc. v. Saint Louis Cnty.,* 258 Minn. 350, 357, 104 N.W.2d 411, 416 (1960) (looking to an attorney general opinion when the statute was ambiguous).[4]

A statute is ambiguous when it is "susceptible to more than one reasonable interpretation." *Carufel,* 783 N.W.2d at 542. Appellants argue that the term "owners" is ambiguous because the statute does not define the term. But the absence of a definition does not render the statute ambiguous because we are required to apply the term's "common and approved usage." Minn.Stat. § 645.08(1). When we apply the "common and approved usage" of "owner"—one with the right to possess, use and convey the property—the statute is susceptible to only one reasonable interpretation and, therefore, is not ambiguous. Because the statute is not ambiguous, we decline appellants' invitation to rely on extrinsic sources.

Finally, appellants argue that public policy supports their position that the State is not an "owner" under Minn.Stat. § 429.031, subd. 1(f). Appellants contend that interpreting the statute to include the State as an owner would eliminate the first line of defense against the use of special assessments that serve a non-local purpose. Appellants also argue that such an interpretation would result in an unfair statutory scheme whereby the State can petition for an improvement and then de-

---

3. According to appellants, it is inconsistent with the legislative purpose to construe the language of the statute to encompass the State as an owner because such a construction would in effect permit the government to petition itself. In particular, appellants argue that such a construction is inconsistent with the legislative purpose of Minn.Stat. § 429.031, subd. 1(f), which appellants contend is to protect individual property owners from government overreach.

4. Appellants also rely on the canon of construction that "[t]he state is not bound by the passage of a law unless named therein, or unless the words of the act are so plain, clear, and unmistakable as to leave no doubt as to the intention of the legislature." Minn.Stat. § 645.27 (2012). Appellants assert that because the State is not named in Minn.Stat. § 429.031, subd. 1(f), we cannot interpret the statute to include the State. We have never applied this canon to a law not being enforced against the State. *See, e.g., Holmberg*

*v. Holmberg,* 588 N.W.2d 720, 727 (Minn. 1999) (finding the Marriage Dissolution Award of Attorney Fees statute did not apply to the State); *Lienhard v. State,* 431 N.W.2d 861, 864 (Minn.1988) ("Since the rationale for the rule of construction that the State is not bound by a statute unless named therein, Minn.Stat. 645.27 (1986), lies in the doctrine of sovereign immunity, there is little reason to extend its application to the construction of a statute subjecting the State to liability for tort claims as if it were a private person."); *State ex rel. Lord v. Anderson,* 251 Minn. 401, 409, 87 N.W.2d 928, 928 (1958) (finding that "providing for allowance of costs and disbursements to the prevailing party upon an appeal, is not expressly applicable to the state, and so under 645.27 may not be applied to the state"). Section 429.031, subdivision 1(f), does not enforce anything against the State. Instead, the statute allows the State the same benefit as any landowner—the right to petition for an improvement to property.

cline to pay the assessment in full. *See* Minn.Stat. §§ 429.031, subd. 1(f), 435.19, subd. 2. We acknowledge that the current statutory framework grants the State discretion to determine if, and how much, it should be assessed. We also recognize that interpreting the word "owner" to include the State could reduce the ability of private landowners to prevent improvements if they own property adjacent to state-owned land. But the statutory framework, as set forth by the Legislature, requires this result. Appellants' policy arguments do not provide a basis for us to ignore the application of the plain language of section 429.031, subdivision 1(f). *See* Minn.Stat. § 645.16 (stating that "[w]hen the words of a law ... are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit").[5]

 In sum, under the common and ordinary meaning of "owner," the State of Minnesota is an owner that may petition a municipality for an improvement under Minn.Stat. § 429.031, subd. 1(f). Because CLC is an "owner," we hold that CLC's petition under section 429.031, subdivision 1(f) is valid.

Affirmed.

## DISSENT

G. ANDERSON BARRY, Justice (dissenting).

I respectfully dissent. It is my opinion that Minn.Stat. § 429.031, subd. 1(f) (2012) is unambiguous because, when looking at the statute as a whole, the Legislature did not intend the State to be an "owner" capable of petitioning for a municipal improvement funded by special assessments. Because I disagree with the majority that the resolution of the City Council is valid, I would reverse the decision of the court of appeals.

## I.

The plain language of Minn.Stat. § 429.031, subd. 1(f), clearly establishes that the State is not an "owner" under the 35 percent owner rule. We are required to first analyze "whether the statute's language, on its face, is clear or ambiguous" when interpreting a statute. *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000). But when assessing whether a statute is "clear or ambiguous," we are also charged with considering the context of the statute, not simply analyzing a provision in isolation. *Kachman v. Blosberg*, 251 Minn. 224, 229, 87 N.W.2d 687, 692 (1958).

To understand the context of subdivision 1(f), we must analyze both Minn.Stat. § 429.031 (2012) and Minn.Stat. § 435.19 (2012). Minnesota Statutes ch. 429 (2012) governs the use of special assessments in most contexts. Under section 429.031, the number of votes from a governing body needed to adopt a resolution for a special improvement depends on whether abutting property owners petitioned for the improvement. Minn.Stat. § 429.031, subd. 1(f). If "the improvement has been petitioned for by the owners of not less than 35 percent in frontage of the real property abutting on the streets named in the petition as the location of the improvement," then "a resolution ordering the improvement may be adopted" with a "vote of a

---

**5.** Appellants also challenge the petition on the basis that CLC did not agree to be bound by the special assessment until four months after it submitted the petition. This challenge has no merit. CLC is the owner of more than 35 percent of the property abutting the improvement regardless of when it signed the agreement. Under the plain language of the statute, CLC was an "owner" both before and after it bound itself to pay a portion of the cost of the improvement because it has the right to possess, use, and convey the land.

majority of all members of the council." *Id.* But in the absence of a petition, "the resolution may be adopted only by vote of four-fifths of all members of the council." *Id.* If, however, "all owners of real property abutting ... [an] improvement ... petition the council to construct the improvement and to assess the entire cost against their property, the council may, without a public hearing, adopt a resolution determining such fact and ordering the improvement" ("unanimity petition"). *Id.*, subd. 3. As a result, section 429.031 provides three mechanisms by which special assessments can be imposed on property owners.

While Minn.Stat. ch. 429 governs the use of special assessments in most cases, Minn. Stat. ch. 435 (2012) exempts public property from the imposition of special assessments. Under the statute, when property is owned by the State or its instrumentality, "the governing body of the city or town may determine the amount that *would have been assessed had the land been privately owned.*" Minn.Stat. § 435.19, subd. 2 (emphasis added). But, "[n]o instrumentality, department or agency shall be bound by the determination of the governing body and may pay from available funds or recommend payment in such lesser amount as it determines is the measure of the benefit received by the land from the improvement." *Id.* Thus, while a municipality can determine the amount that *would* be assessed against state-owned property if it was privately owned, a special assessment cannot *actually be imposed* on state-owned property.

The majority holds that when the "common and approved usage" of the term "owner" is applied, Minn.Stat. § 645.08(1) (2012), the State can petition for an improvement under the 35 percent owner rule. The dictionary defines an "owner" as "[o]ne who has the right to possess, use, and convey something." *Black's Law Dictionary* 1214 (9th ed.2009). Thus, if we simply apply the dictionary definition of the term and end the analysis, Central Lakes College certainly can sign the petition as the title owner of 39 percent of the property abutting the project. This construction is unreasonable, however, in light of the context of Minn.Stat. § 429.031.

We have repeatedly stated that " '[i]t is always an unsafe way of construing a statute or contract to divide it, by a process of etymological dissection, into separate words, and then apply to each, thus separated from its context, some particular definition given by lexicographers, and then reconstruct the instrument upon the basis of these definitions.' " *Christensen v. Dep't of Conservation, Game & Fish*, 285 Minn. 493, 499–500, 175 N.W.2d 433, 437 (1970) (quoting Justice William Mitchell writing in *Int'l Trust Co. v. Am. Loan & Trust Co.*, 62 Minn. 501, 503, 65 N.W. 78, 79 (1895)). Instead, we are required to look beyond words in isolation "and inquire into the operation of the statute" in order that a term's definition be ascertained by its context. *In re Raynolds' Estate*, 219 Minn. 449, 455, 18 N.W.2d 238, 241 (1945). Our case law mandates that we look at Minn.Stat. § 429.031 "as a whole and interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 711 (Minn.2013) (citation omitted) (internal quotation marks omitted). In doing so, we generally read a term that appears several places within a statutory text "the same way each time it appears." *See Ratzlaf v. United States*, 510 U.S. 135, 143, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994).

We have often found the dictionary definition of a term inapposite in light of the statutory context. *See, e.g., State v. Less-*

*ley,* 779 N.W.2d 825, 833 (Minn.2010) (concluding that the language "by the parties" and "in all cases" under Minn. Const. art. I, § 4, when read in context, was unambiguous and only applied to civil trials—even though "by itself" those provisions "may be read to suggest that the State has a right to object to a criminal defendant's jury-trial-waiver request"); *State v. Clark,* 755 N.W.2d 241, 250–51 (Minn.2008) (interpreting the phrase "[t]he county attorney" to include assistant county attorneys when read in context); *Chiodo v. Bd. of Ed. of Special Sch. Dist. No. 1,* 298 Minn. 380, 381–82, 215 N.W.2d 806, 807–08 (1974); *Kollodge v. F. & L. Appliances, Inc.,* 248 Minn. 357, 360–61, 80 N.W.2d 62, 64–65 (1956) (defining the term "crosswalk" as "uncontrolled crosswalk[ ]" because of the context of the statute even when the legislature knew how to distinguish between controlled and uncontrolled intersections). For example, in *Chiodo,* the term "teacher" was defined for the purpose of the tenure statute as "every person regularly employed . . . to give instruction in a classroom." 298 Minn. at 381, 215 N.W.2d at 807 (quoting Minn.Stat. § 125.17, subd. 1(a) (1971)). We noted that, given the common and approved usage of the terms "instruction" and "classroom," a basketball coach could be considered a teacher for the purpose of tenure. *Id.* at 382, 215 N.W.2d at 808. We observed that the definition of "instruction . . . clearly describes the function of a coach" and "the word 'classroom' might include a gymnasium where basketball is taught." *Id.* at 382, 215 N.W.2d at 808. In spite of these common uses, however, we held that a coach had not acquired tenure because the "words of a statute are to be viewed in their setting, not isolated from their context." *Id.,* at 382, 215 N.W.2d at 808. Thus, by looking at other provisions of the statute, we concluded that the Legislature intended a narrower interpretation of the terms. *Id.* at 382–83, 215 N.W.2d at 808. In keeping with this precedent, we must not look simply at a dictionary definition when interpreting the plain language of a statute. Instead, we *must* assess whether applying the dictionary definition makes sense in context. When this is done here, the word "owner" in subdivision 1(f) is only susceptible to one reasonable interpretation: owners of assessable property.

Minnesota Statutes § 429.031 contains two provisions that allow landowners to petition for an improvement: subdivision 1(f) and subdivision 3. Subdivision 3 states that "[w]henever all owners of real property abutting . . . [an] improvement shall petition the council to construct the improvement and to assess the entire cost against their property, the council may, without a public hearing, adopt a resolution determining such fact and ordering the improvement." Minn.Stat. § 429.031, subd. 3. Consequently, to have a valid unanimity petition, "all owners" upon which the "entire cost" can be assessed must sign the petition. *Id.* Because section 435.19, subdivision 2, exempts state-owned property from the imposition of special assessments, the State *cannot be assessed.* Thus, the state-property exemption precludes the State from signing a unanimity petition because no portion of the "entire cost" can be assessed against it. *Id.; see also id.* § 435.19, subd. 2. For this reason, I conclude the word "owner" for the purpose of a unanimity petition means "owners of assessable property" in spite of the dictionary definition of the term "owner."

Consequently, the interpretation of subdivision 1(f) applied by the majority does not make sense in context because we read a term that appears several places within a statute "the same way each time it appears." *Ratzlaf,* 510 U.S. at 143, 114 S.Ct. 655. Therefore, because the word "owner" is susceptible to only one reason-

able interpretation in subdivision 3, only one interpretation of the word "owner" in subdivision 1(f) is reasonable: owners of assessable property. A contrary interpretation results in the term having two meanings within the same statute, both applying to petition requirements.

Interpreting the statute to include the State as an owner is also unreasonable because it creates the absurd result that the State *cannot* sign a petition when all of the owners abutting a proposed improvement agree, Minn.Stat. § 429.031, subd. 3, but *can* sign a petition when there is disagreement among property owners on the desirability of the proposed improvement, *id.*, subd. 1(f). *See* Minn.Stat. § 645.17(1) (2012) ("[T]he legislature does not intend a result that is absurd, impossible of execution, or unreasonable."). Additionally, allowing the State to petition for an improvement paid for by special assessments is unreasonable in light of the fact that the State *cannot be assessed. See id.; see also id.* § 435.19, subd. 2 (finding the council can "determine the amount that would have been assessed"). If the State can sign a petition, it allows a more lenient vote requirement to impose special assessments, making it more likely the project will move forward, while allowing the State to decide whether it will pay any of the cost of the improvement it requested. In light of the unreasonableness of applying the dictionary definition when subdivision 1(f) is read in context, the term "owner" is susceptible to only one reasonable interpretation: owners of assessable property.

Therefore, I disagree with the majority's conclusion that the plain language of the term "owner" in Minn.Stat. § 429.031, subd. 1(f) includes the State. Instead, when looking at the context of the statute, it is plain that the State is not an "owner" and, therefore, the petition in this case was invalid.

## II.

While I would hold that the word "owner" in Minn.Stat. § 429.031, subd. 1(f) unambiguously means owners of assessable property, the tension between the use of the term "owner" in subdivisions 1(f) and 3, arguably, creates an ambiguity. *State v. Carufel,* 783 N.W.2d 539, 542 (Minn.2010) (stating that a statute is ambiguous if it is "susceptible to more than one reasonable interpretation"). In some situations, we have found that even though a term standing alone appeared to use a "common and approved" definition, the term was still ambiguous when the statute was read in context. *See Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 385 (Minn.1999). Here, even if the dictionary definition of the word "owner" was not unreasonable, the definition of the term would still be elusive when considered in context with subdivision 3—where the term means owners of assessable property. This is so because our precedent suggests that we read a term the "same way each time it appears." *See Ratzlaf,* 510 U.S. at 143, 114 S.Ct. 655; *Amaral,* 598 N.W.2d at 385. If the term "owner" in section 429.031, subdivision 1(f) is ambiguous, there are three relevant means by which we determine Legislative intent: the circumstances under which the statute was enacted; subsequent amendments to Minn.Stat. § 429.031; and the mischief to be remedied by the provision. *See* Minn.Stat. § 645.16 (2012).

We first consider the circumstances under which Minn.Stat. § 429.031 was enacted to determine the meaning of the word "owner." Minn.Stat. § 645.16(2). The 35 percent owner rule appears first in Mason's Minn.Stat. § 1815 (1927), which provided that the vote required by a city council to impose an assessment was a majority "when petitioned for by the *own-*

*ers of not less than thirty-five per cent (35%) in frontage of the real property abutting*" the improvement. (Emphasis added). The Minnesota Attorney General interpreted the 1927 statute in 1936, finding the State was not an "owner." Op. Att'y Gen. No. 56, at 133–35 (June 30, 1936). The attorney general reasoned that allowing the State to petition "would not only be wrong in principle and wrong in theory, but it would also be contrary to the spirit and intention of the statute[ ]." *Id.* at 135 (quoting *Armstrong v. Ogden City*, 12 Utah 476, 43 P. 119, 121 (1895)). Later, the language of the 1927 statute was transplanted into Minn.Stat. § 412.411 (1949), and then later moved to Minn.Stat. § 429.031 (1953). Both times the 35 percent owner rule was recodified, the Legislature did not meaningfully alter the words of the provision or express disagreement with the attorney general's interpretation.

When the attorney general interprets a statute in a published opinion and the relevant language of the interpreted statute is transplanted into a new statute, we generally assume that the Legislature incorporated the interpretation of the attorney general. *See Eelkema v. Bd. of Educ. of City of Duluth*, 215 Minn. 590, 593–94, 11 N.W.2d 76, 77–78 (1943) (holding a superintendent was not a teacher under a statute when the attorney general had interpreted a definition of "teacher" that was later incorporated into a new statute); *Enger v. Holm*, 213 Minn. 154, 164–65, 6 N.W.2d 101, 106 (1942) (stating that "the general rule that the reenactment adopted the prior construction applie[d] . . . because that is the *presumed* legislative intention" (emphasis added)). Thus, because the language of the 35 percent owner rule was transplanted into Minn.Stat. § 429.031, subd. 1(f) from a previously-interpreted statute, the June 30, 1936 attorney general's opinion provides strong evidence that the Legislature did not intend the State to be an "owner."

Second, we also consider subsequent amendments to Minn.Stat. § 429.031, to discover legislative intent when dealing with a statutory ambiguity. Minn.Stat. § 645.16(5). In 1954, the attorney general published two opinions, concluding that the State was not an "owner" for the purpose of the 35 percent owner rule. Op. Att'y Gen. No. 387–B–10, at 1–5 (June 29, 1954); Op. Att'y Gen. No. 408–c, at 1–2 (Oct. 28, 1954). Since 1954, the statute has been amended fifteen times without meaningful alteration to the 35 percent owner rule. Minn.Stat. § 429.031 (listing amendments in 1955, 1957, 1961, 1963, 1965, 1967, 1973, 1984 (four amendments), 1986, 1994, 1996, and 2000). In some circumstances, when the Legislature amends a statute and leaves unchanged a provision that received a definitive interpretation by the attorney general, we have held that the Legislature ratified the attorney general's interpretation. *See, e.g., Stoecker v. Moeglein*, 269 Minn. 19, 22–23, 129 N.W.2d 793, 796 (1964) ("In the instant case the fact that shortly after the attorney general rendered an opinion . . . the legislature dealt with that section and left it unchanged . . . strongly supports plaintiffs' position that the legislature intended to adopt the attorney general's interpretation of the statute."). The fact that the Legislature did not change the language of subdivision 1(f) while amending other portions of the statute after publication of the 1954 opinions reinforces the conclusion that the Legislature did not intend the State to be an "owner" capable of petitioning for an improvement.

Finally, we also consider the mischief to be remedied by Minn.Stat. § 429.031 when assessing legislative intent. Minn.Stat. § 645.16(3). Holding that the State is permitted to petition for an improvement un-

der Minn.Stat. § 429.031 undermines the mischief to be remedied by the statute in two important ways: (1) it limits property owners' ability to prevent an improvement; and (2) it potentially forces landowners who do not want a benefit to their property to pay practically the entire expense.

Allowing the State to be an "owner" under the 35 percent owner rule makes those who own property adjacent to State land "powerless to prevent the improvement." *Armstrong,* 43 P. at 121. "The basis for the levy of special assessments for local improvements is that the property so assessed is 'specially benefitted' by the improvement." *Quality Homes, Inc. v. Vill. of New Brighton,* 289 Minn. 274, 280, 183 N.W.2d 555, 559 (1971). Minnesota Statutes § 429.031, subd. 1(f), presumes some skepticism on the part of property owners as to improvements paid for by special assessments. The unpopularity of improvement assessments is demonstrated by the stringent four-fifths, super-majority rule imposed on municipalities in the absence of a petition by the owners of at least 35 percent of the land abutting the proposed improvement. Minn.Stat. § 429.031, subd. 1(f). Thus, the Legislature established the 35 percent owner rule to avoid the imposition of special assessments on owners who do not want to pay for a proposed benefit to their property or dispute the benefit to their property. Concluding the State is an "owner" dilutes this protection for those who own land adjacent to state-owned property because the State can reduce the vote necessary to pass a resolution approving special assessments. Thus, the mischief the 35 percent owner rule remedies is undermined by the majority's interpretation.

The second consequence of interpreting the word "owner" to include the State is the potential unfairness of compelling private landowners "to pay practically the entire expense[ ]" of an improvement for which the State petitioned. *Armstrong,* 43 P. at 121. As the court of appeals noted, including the State as an "owner" "could lend the appearance of unfairness" because the State may elect not to pay any portion of the cost of an improvement for which it petitioned. *City of Brainerd v. Brainerd Invs. P'ship,* 812 N.W.2d 885, 891 (Minn. App.2012). The purpose behind the petition requirement—preventing assessments on property when the property owners do not desire the benefit—is undermined because those who did not desire the improvement may be forced to pay its full cost.

While I would hold that the statute unambiguously says that the State is not an "owner" under Minn.Stat. § 429.031, subd. 1(f), other indicators of legislative intent establish that the State is not an owner for the purpose of petitioning for a municipal improvement. Therefore, I would hold that CLC was not eligible to sign a petition for a municipal improvement and the resolution to fund the College Drive project with special assessments was invalid because it was not passed by the required four-fifths majority.[1]

### III.

The City failed to pass a resolution to fund the College Drive project with special assessments by the requisite four-fifths majority because the State is not an "owner" for the purpose of the 35 percent owner rule. Accordingly, I would reverse and remand to the court of appeals to give that court the opportunity to rule on the remaining issues in this consolidated appeal.

PAUL H. ANDERSON (dissenting).

---

1. Of course, a project that does not meet the required 35 percent threshold may still be approved by a four-fifths vote of the City Council. Minn.Stat. § 429.031, subd. 1(f).

I join in the dissent of Justice G. Barry Anderson.