*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0317**

Minnesota Police and Peace Officers Association, et al.,
Respondents,

vs.

National Football League, et al.,
Appellants,

Regents of the University of Minnesota,
Defendant.

**Filed August 17, 2015
Reversed and remanded
Larkin, Judge**

Hennepin County District Court
File No. 27-CV-14-2342

Cort C. Holten, Jeffrey D. Bores, Gary K. Luloff, Chestnut Cambronne PA, Minneapolis, Minnesota (for respondents)

Daniel J. Connolly, Bruce Jones, Aaron D. Van Oort, Faegre Baker Daniels LLP, Minneapolis, Minnesota (for appellants)

Brian J. Slovut, University of Minnesota, Minneapolis, Minnesota (for defendant)

Mark R. Bradford, Christine E. Hinrichs, Bassford Remele, Minneapolis, Minnesota (for amicus curiae Sergeants Benevolent Association)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Larkin, Judge.

**UNPUBLISHED OPINION**

**LARKIN**, Judge

In this appeal, we are asked to decide the narrow question of whether appellant National Football League's policy prohibiting firearms within its stadiums violates the Minnesota Citizens' Personal Protection Act of 2003 (PPA), Minn. Stat. § 624.714 (2014), by precluding off-duty peace officers from carrying their weapons into games played by appellant Minnesota Vikings LLC at TCF Bank Stadium in Minneapolis. The district court ruled that the PPA prevents private-property owners from excluding armed off-duty peace officers. Because the PPA by its plain language does not apply to active licensed peace officers, we reverse and remand.

## FACTS

In September 2013, appellant National Football League (NFL) issued a new Firearms and Weapons Policy (the policy) providing that firearms are strictly prohibited within NFL facilities, including stadiums. The only exceptions to the policy are for on-duty law-enforcement officers and private security contractors hired to work at games. Member clubs, including appellant Minnesota Vikings LLC, are required to enforce the policy. In December 2013, an off-duty Minneapolis police officer attending a Vikings game was required to surrender his weapon based on the policy before entering the Hubert H. Humphrey Metrodome.

Respondents Minnesota Police and Peace Officers Association and Police Officers Federation of Minneapolis commenced this declaratory-judgment action against the NFL

and the Vikings.[1]  They alleged that the policy "violates Minnesota law, particularly Minn. Stat. § 624.714," and sought a declaration that the policy "violates Minnesota law and is unenforceable at any stadium in Minnesota."  They also sought injunctive relief to preclude the NFL and the Vikings from enforcing the policy.

The NFL and the Vikings moved to dismiss the complaint, and respondents cross-moved for declaratory judgment and for injunctive relief, seeking a declaration that the NFL policy "violates Minn. Stat. § 624.714 and is unenforceable at any stadium in Minnesota."  The district court denied the NFL and Vikings' motion to dismiss and granted declaratory judgment against the NFL and the Vikings to respondents.  The court declared that the PPA precludes property owners from excluding armed off-duty officers but determined that injunctive relief was not yet warranted.

The NFL and the Vikings appeal.

## D E C I S I O N

The Minnesota Legislature passed the PPA in 2003 and 2005.  *See* 2003 Minn. Laws ch. 28, art. 2, §§ 4-28, at 274-87 (enacting the PPA); 2005 Minn. Laws ch. 83 § 1, at 442 (reenacting the PPA).  The primary motivation behind the PPA was to change Minnesota from a "may issue" to a "shall issue" state with respect to permits to possess

---

[1] Respondents also sued the Regents of the University of Minnesota (the university), which currently leases TCF Bank Stadium to the Vikings for home games during the construction of the team's new stadium.  Respondents alleged that the NFL would enforce the policy at TCF Bank Stadium.  The district court granted respondents' motion for summary judgment against the university, and the university has not appealed.

3

and carry firearms.[2] *See* Minn. Stat. § 624.714, subd. 2(b) (providing that a sheriff "must issue a permit to an applicant" if certain requirements are met and exceptions do not apply); *Unity Church of St. Paul v. State*, 694 N.W.2d 585, 588 (Minn. App. 2005) (noting that the PPA, when introduced in 2003, "proposed a 'must issue' system for issuing permits to carry handguns in public places"), *review dismissed* (Minn. June 9, 2005). But the PPA also significantly limits the rights and remedies of property owners who wish to exclude persons carrying firearms from their property. *See* Minn. Stat.

[2] The PPA uses the terms "firearm" and "pistol," the latter of which is defined to include any

> weapon designed to be fired by the use of a single hand and with an overall length less than 26 inches, or having a barrel or barrels of a length less than 18 inches in the case of a shotgun or having a barrel of a length less than 16 inches in the case of a rifle (1) from which may be fired or ejected one or more solid projectiles by means of a cartridge or shell or by the action of an explosive or the igniting of flammable or explosive substances; or (2) for which the propelling force is a spring, elastic band, carbon dioxide, air or other gas, or vapor.
>
> "Pistol" does not include a device firing or ejecting a shot measuring .18 of an inch, or less, in diameter and commonly known as a "BB gun," a scuba gun, a stud gun or nail gun used in the construction industry or children's pop guns or toys.

Minn. Stat. § 624.712, subd. 2 (2014).

The NFL policy uses the term "firearm." *See Black's Law Dictionary* 710 (9th ed. 2009) (defining "firearm" as "[a] weapon that expels a projectile (such as a bullet or pellets) by the combustion of gun powder or other explosive"). Firearm is a broader term than pistol. *See* Minn. Stat. § 646.712, subd. 3 (2014) (defining "antique firearm" as "any firearm, *including any pistol*," with specified characteristics (emphasis added)). For purposes of this opinion, however, we use the terms interchangeably.

§ 624.714, subd. 17.  Under subdivision 17 of the PPA, in order to exclude those lawfully possessing and carrying firearms, property owners must comply with specific criteria in the statute, including posting the now-familiar signs stating that an entity "BANS GUNS ON THESE PREMISES."[3]  Peace officers[4] are expressly excluded from the permitting requirements of the PPA, and, subdivision 17 does not apply to "an active licensed peace officer."  Minn. Stat. § 624.714, subds. 1a, 17(g)(1).

The issue raised in this appeal is whether the PPA impacts appellants' ability to exclude from Vikings games off-duty licensed peace officers who are carrying firearms. We initially observe two underlying premises on which the parties appear to agree.  First, respondents contend, and appellants do not dispute, that off-duty peace officers are authorized to carry firearms without a permit under Minnesota and/or federal law, subject to varying departmental policies governing individual officers.   Second, appellants contend, and respondents do not dispute, that they have a common-law right, as property owners, to exclude armed off-duty officers.   Neither of these underlying premises is

---

[3] In *Edina Cmty. Lutheran Church v. State*, this court held that certain provisions of the PPA, including the signage requirements, could not constitutionally be applied to churches and affirmed injunctive relief exempting churches from those provisions.  745 N.W.2d 194, 197-98, 213 (Minn. App. 2008), *review denied* (Minn. Apr. 29, 2008).

[4] The PPA incorporates the definition of "peace officer" from Minn. Stat. § 626.84, subd. 1.  Minn. Stat. § 624.714, subd. 1a.  Section 626.84 defines the term to mean "an employee or an elected or appointed official of a political subdivision or law enforcement agency who is licensed by the [Board of Peace Officer Standards and Training], charged with the prevention and detection of crime and the enforcement of the general criminal laws of the state and who has the full power of arrest," as well as agents and officers of certain state agencies and tribal officers.  Minn. Stat. § 626.84, subd. 1(c) (2014).

within the scope of our review in this appeal, and we assume without deciding that the parties are correct in their contentions.

Turning our attention to the issue that is properly before us, we begin, as we must, with the plain language of the PPA. The interpretation and construction of a statute raises an issue of law subject to de novo review. *Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 649 (Minn. 2012); *see also Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn. 1998) (stating that de novo review applies to a district court's summary-judgment application of statutory language). The goal of statutory construction is to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). The legislature has instructed that, "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.*; *see also Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 123 (Minn. 2007) ("We construe statutes to effect their essential purpose but will not disregard a statute's clear language to pursue the spirit of the law."). Thus, "[w]hen legislative intent is clear from the statute's plain and unambiguous language, we interpret the statute according to its plain meaning without resorting to other principles of statutory interpretation." *City of Brainerd v. Brainerd Invs. P'ship*, 827 N.W.2d 752, 755 (Minn. 2013).

By its express language, the PPA is limited to governing the rights of persons, "*other than . . . peace officer[s]*" to obtain permits and carry firearms and the rights of private-property owners to exclude those carrying firearms under a permit. Minn. Stat. § 624.714, subds. 1(a) (emphasis added), 17(a); *see also id.*, subd. 23 (stating that section

6

624.714 "sets forth the complete and exclusive criteria and procedures for the issuance of *permits to carry*" (emphasis added)). Subdivision 17 "sets forth the exclusive criteria to notify *a permit holder* when the otherwise lawful firearm possession is not allowed in a private establishment and sets forth the exclusive penalty for such activity." *Id.*, subd. 17(f) (emphasis added).[5] And subdivision 17 expressly provides that it "does not apply to . . . an active licensed peace officer." *Id.*, subd. 17(g)(1).

The parties do not argue that the language in subdivision 17 is ambiguous, nor do we discern any ambiguity. "A statute is ambiguous if its language is subject to more than one reasonable interpretation." *Fay v. Dep't of Emp't & Econ. Dev.*, 860 N.W.2d 385, 387 (Minn. App. 2015). Here, the only reasonable interpretation of the statutory language is that the PPA does not apply to active licensed peace officers, *in any way*. It neither adds to nor subtracts from the rights of such officers to carry firearms or the rights of private-property owners to exclude those officers.

Because the language of the PPA is clear and free from ambiguity, we are required to apply it as written, and we may not resort to principles of statutory construction. *See City of Brainerd*, 827 N.W.2d at 755. Accordingly, we hold that the district court erred by applying principles of construction to conclude that the PPA prevents private-property owners from excluding armed off-duty officers. In so holding, we acknowledge the logical inferences that might be drawn from application of the principles of statutory

---

[5] The trespass prohibition and penalty under subdivision 17 applies to any person carrying a firearm "under a permit *or otherwise*." Minn. Stat. § 624.714, subd. 17(a) (emphasis added). But the exclusivity of the penalty is limited to those carrying with a permit. *Id.*, subd. 17(f).

7

construction—many of which were drawn by the district court and are urged by respondents on appeal. In particular, we agree that it seems unlikely that the legislature would choose to restrict the rights of private-property owners to exclude a permit holder who is carrying a firearm but not an off-duty peace officer who is carrying a firearm. But these persuasive arguments regarding what the legislature must have intended (or not intended) cannot overcome the plain language of the statute. "Courts are bound by a statute as written and may not supply by construction that which the legislature purposefully omits or inadvertently overlooks." *Horodenski v. Lyndale Green Townhome Ass'n*, 804 N.W.2d 366, 371 (Minn. App. 2011) (quotation omitted).

We further observe that principles of construction are used to construe statutory language that is subject to more than one reasonable interpretation. *See Gomon v. Northland Family Physicians, Ltd.*, 645 N.W.2d 413, 416 (Minn. 2002) (stating that, "when the language of the statute is clear, the court must not engage in any further construction"). Respondents' assertions, and the district court's analysis, are divorced from any particular language in the statute and instead purport to effectuate an overriding legislative purpose. Respondents effectively ask this court not to interpret statutory language, but to identify and carry out alleged legislative policy. But however apparent the policy, this we cannot do. *See LaChapelle v. Mitten*, 607 N.W.2d 151, 159 (Minn. App. 2000) ("Because this court is limited in its function to correcting errors it cannot create public policy."), *review denied* (Minn. May 16, 2000); *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn. App. 1987) ("[T]he task of extending existing law falls to the

8

supreme court or the legislature, but it does not fall to this court."), *review denied* (Minn. Dec. 18, 1987).[6]

Respondents assert that interpreting the PPA as applying to peace officers promotes an absurd result that the legislature could not have intended. But the presumption against absurd results is a canon of construction that "is not available to override the plain language of a clear and unambiguous statute, except in an exceedingly rare case in which the plain meaning of the statute utterly confounds the clear legislative purpose of the statute." *Schatz*, 811 N.W.2d at 651 (quotation omitted). This is not such a case. The legislature's intent in passing the PPA, as reflected in its plain language, was to create a firearms-permitting process for persons who are *not* peace officers and to govern property owners' rights to exclude those permit holders from private establishments. *See* Minn. Stat. § 624.714, subds. 1(a), 17. Excluding peace officers from the scope of a statute addressed to permitting private citizens to carry firearms does not "utterly confound" a clear purpose of the statute.

---

[6] The structure and text of subdivision 17 show the various policy considerations that the legislature weighed in determining the appropriate balance between permit holders' rights to carry and the rights of private-property owners. *See* Minn. Stat. § 624.714, subd. 17(c) (precluding private-property owners from prohibiting lawful carrying of firearms in parking lots), (d) (exempting private residences from subdivision 17 and providing that lawful possessors of private residences may prohibit firearms in "any lawful manner"), (e) (precluding landlords from prohibiting lawful carrying of firearms by tenants or their guests). Defining the scope of off-duty officers' rights to carry on private property implicates similar—and likely additional—policy considerations that well exceed the scope of our review as an error-correcting court. *See St. Aubin v. Burke*, 434 N.W.2d 282, 284 (Minn. App. 1989) (stating that this court's function is "primarily decisional and error correcting rather than . . . legislative or doctrinal" (quotation omitted)), *review denied* (Minn. Mar. 29, 1989).

Our decision today should not be construed as holding that appellants have the right to exclude from Minnesota stadiums off-duty peace officers who are carrying firearms. We merely hold that any such right is not governed by the PPA. Other provisions of state or federal law may apply. As we note above, we have assumed without deciding that the common-law right to exclude extends to off-duty peace officers carrying firearms. But that issue has not been addressed in the caselaw. In addition, the federal Law Enforcement Officers Safety Act of 2004 (LEOSA) authorizes qualified law enforcement officers to carry concealed weapons, subject to state laws that "permit private persons or entities to prohibit or restrict the possession of concealed firearms on their property." 18 U.S.C. § 926B(b)(1) (2012). Respondents mention LEOSA in their brief, but they do not request relief under that statute, and whether the rights granted under LEOSA are limited by state common-law rights to exclude appears to be an issue of first impression. Because neither of these issues was raised to and addressed by the district court, or adequately raised and argued in this court, they are not properly before us in this appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that appellate courts will not consider issues not argued to and decided by the district court); *Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (stating that issues not briefed on appeal are waived).

Because the district court erred by concluding that the NFL policy violates the PPA, we reverse the grant of summary judgment to respondents. Appellants urge this court to direct the entry of judgment in their favor. But, although we have determined that the PPA is inapplicable, it is unclear from the record whether there are other theories

10

within the scope of the pleadings that remain to be adjudicated. Accordingly, we remand the case to the district court for further proceedings consistent with this opinion. On remand, the district court shall have discretion to grant amendments to the pleadings as justice requires. *See* Minn. R. Civ. P. 15.01 (providing that leave to amend a pleading "shall be freely given when justice so requires").

**Reversed and remanded.**